1  ARNOLD & PORTER LLP
   KENNETH G. HAUSMAN (No. 57252)
2  kenneth.hausman@aporter.com
   DOUGLAS A. WINTHROP (No. 183532)
3  douglas.winthrop@aporter.com
   JULIAN Y. WALDO (No. 277783)
4  julian.waldo@aporter.com
   Three Embarcadero Center, 10th Floor
5  San Francisco, CA 94111-4024
   Telephone:    415.471.3100
6  Facsimile:    415.471.3400

7  BOSTWICK LAW
   GARY L. BOSTWICK (No. 79000)
8  gbostwick@B1law.com
   12400 Wilshire Blvd., Suite 400
9  Los Angeles, CA 90025
   Telephone:    310.979.6059
10 Facsimile:    424.228.5975

11 Attorneys for Defendant
   JAMES CHANOS
12

13              UNITED STATES DISTRICT COURT

14            NORTHERN DISTRICT OF CALIFORNIA

15                SAN FRANCISCO DIVISION

16

17 STEPHEN WYNN and WYNN RESORTS          Case No.: CV 14-4329 WHO
   LIMITED,
18                                        **NOTICE OF DEFENDANT JAMES
                         Plaintiffs,      CHANOS'S SPECIAL MOTION AND
19                                        SPECIAL MOTION TO STRIKE
            v.                            PLAINTIFFS' COMPLAINT AND
20                                        REQUEST FOR ATTORNEYS' FEES
   JAMES CHANOS,                          [Cal. Code Civ. Proc. §425.16]**
21
                         Defendant.       Date:        December 3, 2014
22                                        Time:        2:00 p.m.
                                          Courtroom:   2
23                                        Judge:       Hon. William H. Orrick
24                                        Complaint Filed:  September 25, 2014
25

26

27

28

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES                                      1

I.    INTRODUCTION.                                                       1

II.   FACTUAL BACKGROUND.                                                 3

    A.   James Chanos.                                           3

    B.   Stephen Wynn And Wynn Resorts.                         4

    C.   University Of California, Berkeley Graduate School Of Journalism's Investigative Reporting Symposium.                     7

III.  LEGAL ARGUMENT.                                                     8

    A.   Overview Of Section 425.16.                            8

    B.   Plaintiffs' Claim Against Mr. Chanos Arises From His Statements On A Public Issue Or Topic Of Public Interest.              9

    C.   Plaintiffs Cannot Establish A Probability Of Prevailing On The Merits Of Their Claim Against Mr. Chanos.                11

        1.   Mr. Chanos Did Not Accuse Mr. Wynn Or Wynn Resorts Of Violating The FCPA.                                    13

        2.   Mr. Chanos Gave His Opinion Of Investment Risk, Which Is Not Actionable.                                       14

        3.   Plaintiffs Cannot Prove Mr. Chanos Acted With Malice.    14

            a.   Mr. Wynn And Wynn Resorts Are Public Figures.    15

            b.   Mr. Chanos's Statements Were Accurate And Made With A Reasonable Basis.                                 16

        4.   Mr. Chanos's Statements Were Privileged Under California Law.                                             18

    D.   Mr. Chanos Is Entitled To Recover Attorneys' Fees And Costs In Connection With This Motion.                         19

IV.   CONCLUSION.                                                         20

1

**TABLE OF AUTHORITIES**

2

Page(s)

3

**Cases**

4

*Amaranth LLC v. J.P. Morgan Chase & Co.*,
5
   954 N.Y.S.2d 531 (App. Div. 2012) ............................................................ 14

6

*Bernardo v. Planned Parenthood Fed'n of Am.*,
   115 Cal. App. 4th 322 (2004) ...................................................................... 19

7

*Brown v. Kelly Broad., Inc.*,
8
   48 Cal. 3d 711 (1989) ............................................................................ 18, 19

9

*Compuware Corp. v. Moody's Investors Servs., Inc.*,
   499 F.3d 520 (6th Cir. 2007) ...................................................................... 14

10

*Franklin v. Dynamic Details, Inc.*,
11
   116 Cal. App. 4th 375 (2004) ...................................................................... 13

12

*Freeman v. Schack*,
   154 Cal. App. 4th 719 (2007) ........................................................................ 9

13

*GetFugu, Inc. v. Patton Boggs LLP*,
14
   220 Cal. App. 4th 141 (2013) ...................................................................... 11

15

*Gilbert v. Sykes*,
   147 Cal. App. 4th 13 (2007) ........................................................................ 11

16

*Global Telemedia Int'l, Inc. v. Doe 1*,
17
   132 F. Supp. 2d 1261 (C.D. Cal. 2001) ...................................................... 11

18

*Hailstone v. Martinez*,
   169 Cal. App. 4th 728 (2008) ........................................................................ 9

19

*Hansen v. Cal. Dep't of Corr. & Rehab.*,
20
   171 Cal. App. 4th 1537 (2008) .................................................................... 11

21

*Harkonen v. Fleming*,
   880 F. Supp. 2d 1071 (N.D. Cal. 2012) ...................................................... 10

22

*Hecimovich v. Encinal Sch. Parent Teacher Org.*,
23
   203 Cal. App. 4th 450 (2012) .................................................................. 9, 10

24

*Hilton v. Hallmark Cards*,
   599 F.3d 894 (9th Cir. 2010) ...................................................................... 12

25

*Institute of Athletic Motivation v. Univ. of Ill.*,
26
   114 Cal. App. 3d 1 (1980) .......................................................................... 18

27

*Integrated Healthcare Holdings, Inc. v. Fitzgibbons*,
   140 Cal. App. 4th 515 (2006) ...................................................................... 10

28

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005) .................................................................... 12

*Makaeff v. Trump Univ., LLC*,
    715 F.3d 254 (9th Cir. 2013) ........................................................................... 16

*Mindys Cosmetics, Inc. v. Dakar*,
    611 F.3d 590 (9th Cir. 2010) ............................................................................. 2

*Mosesian v. McClatchy Newspapers*,
    233 Cal. App. 3d 1685 (1991) .......................................................................... 16

*Noel v. River Hills Wilsons, Inc.*,
    113 Cal. App. 4th 1363 (2003) ......................................................................... 19

*People ex rel. Lockyer v. Brar*,
    115 Cal. App. 4th 1315 (2004) ........................................................................... 2

*Riese v. Cnty. of Del Norte*,
    12-CV-03723-WHO, 2013 WL 4732603 (N.D. Cal. Sept. 3, 2013) ........... 8, 9, 11, 12

*Salma v. Capon*,
    161 Cal. App. 4th 1275 (2008) ......................................................................... 11

*Schaffer v. City & Cnty. of San Francisco*,
    168 Cal. App. 4th 992 (2008) ............................................................................. 9

*Silvester v. Am. Broad. Cos.*, 839 F.2d 1491 (11th Cir. 1988) ............................... 11, 16

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir.), *amended on other grounds*, 275 F.3d 1187 (9th Cir. 2001) ..... 12

*Summit Bank v. Rogers*,
    206 Cal. App. 4th 669 (2012) ........................................................................... 14

*Taus v. Loftus*,
    40 Cal. 4th 683 (2007) ........................................................................... 3, 9, 10, 18

*Thomas v. Fry's Elecs., Inc.*,
    400 F.3d 1206 (9th Cir. 2005) ............................................................................. 8

*Underwager v. Channel 9 Australia*,
    69 F.3d 361 (9th Cir. 1995) ......................................................................... 13, 14

*United States ex rel. Newsham v. Lockheed Missiles & Space Co.*,
    190 F.3d 963 (9th Cir. 1999) ........................................................................... 19

*Van Buskirk v. Cable News Network, Inc.*,
    284 F.3d 977 (9th Cir. 2002) ........................................................................... 12

*Waldbaum v. Fairchild Publ'ns, Inc.*,
    627 F.2d 1287 (D.C. Cir. 1980) ....................................................................... 15

*Wang v. Wal-Mart Real Estate Bus. Trust*,
    153 Cal. App. 4th 790 (2007) ............................................................................. 8

*Wynn v. Smith*,
    16 P.3d 424 (Nev. 2001) ......................................................................... 2, 4, 15

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Statutes and Rules**

Fed. R. Civ. P. 12(b)(6)                                                                 12

Cal. Civ. Code §47(c)                                                              3, 18

Cal. Code Civ. Proc.
    §425.16                                                                            1, 2
    §425.16(b)(1)                                                                         2
    §425.16(b)(2)                                                                       12
    §425.16(c)                                                                          19
    §425.16(e)                                                                            9
    §425.16(e)(4)                                                                         9

1          PLEASE TAKE NOTICE THAT on December 3, 2014, at 2:00 p.m., or as soon thereafter

2   as the matter may be heard, in Courtroom 2, 17th Floor of the above-entitled court located at 450

3   Golden Gate Avenue, San Francisco, CA 94102, Defendant James Chanos will and hereby does

4   move this Court for an Order striking the sole cause of action in Plaintiffs' Complaint pursuant to

5   California Code of Civil Procedure §425.16.

6          Mr. Chanos requests that the Court strike Plaintiffs' Complaint because it arises from

7   Mr. Chanos's exercise of his right of free speech under the United States and California

8   Constitutions, and because Plaintiffs cannot establish a probability that they will prevail on the

9   merits of their claim.

10          Mr. Chanos bases this motion upon this Notice of Motion and Motion, the supporting

11   Memorandum of Points and Authorities, the Request for Judicial Notice and Declarations of

12   Kenneth G. Hausman and James Chanos and the exhibits attached thereto, the pleadings and other

13   papers on file in this action and upon such other argument or evidence as may be presented prior to

14   the Court's determination of this matter.

15                    **MEMORANDUM OF POINTS AND AUTHORITIES**

16   **I.        INTRODUCTION.**

17          The Complaint by Plaintiffs Stephen A. Wynn and Wynn Resorts Limited ("Wynn Resorts")

18   alleges that Mr. Chanos defamed them when he "stated that Wynn and Wynn Resorts had violated

19   the Foreign Corrupt Practices Act" to a "private audience" at an "'invitation only' event" on April

20   25, 2014, in Berkeley, California.  Compl. ¶¶12-13.[1]  Mr. Chanos said no such thing.  The "event"

21   was a panel discussion at an annual academic symposium devoted to investigative reporting at the

22   University of California, Berkeley Graduate School of Journalism concerning a PBS Frontline

23   documentary on gambling in Macau.  Mr. Chanos, one of four panelists at the event, answered a

24   question from the moderator, explaining why he "got out of" his stock investments in Macau casino

25   operators: *"I began to really get concerned about the risk I was taking with clients' money under*

26   *Foreign Corrupt Practices Act and a variety of, you know, aspects of exactly how business is done*

27

28   _____

[1] The Federal Corrupt Practices Act is often referred by its acronym "FCPA."

1   *there*."  Request for Judicial Notice ("RJN") Ex. 1 (Transcript of symposium ("Transcript")) at 6

2   (emphasis added).[2]

3          This suit is an attempt by Mr. Wynn, "a well-known public figure" (*Wynn v. Smith*, 16 P.3d

4   424, 426 (Nev. 2001)) and principal of a major international gambling enterprise and public

5   company, to chill discussion about Wynn Resorts' Macau operations and Macau casino operators in

6   general.  It is a classic "strategic lawsuit against public participation" and precisely what

7   California's special motion to strike (Cal. Code Civ. Proc. §425.16) was enacted to address: "The

8   point of the anti-SLAPP statute is that you have a right *not* to be dragged through the courts because

9   you exercised your constitutional rights."  *People ex rel. Lockyer v. Brar*, 115 Cal. App. 4th 1315,

10   1317 (2004) (emphasis in original).  As the Ninth Circuit has held, "the statute was designed to

11   allow courts to promptly expose and dismiss meritless and harassing claims seeking to chill

12   protected expression."  *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 595 (9th Cir. 2010) (citation

13   and internal quotation marks omitted).

14          This baseless suit should be dismissed now and, per the anti-SLAPP statute, Plaintiffs

15   should be ordered to reimburse Mr. Chanos for the legal fees he has been forced to incur by their

16   having brought it.  The Complaint's single claim for slander *per se* (Compl. ¶14) indisputably arises

17   from Mr. Chanos's "right of . . . free speech under the United States Constitution or the California

18   Constitution in connection with a public issue" (Cal. Code Civ. Proc. §425.16(b)(1)):  *He was*

19   *speaking as a panelist at a university symposium about a public-television-produced documentary.*

20   Under the anti-SLAPP statute, the burden therefore shifts to Plaintiffs to demonstrate a probability

21   of prevailing on the merits of their claim.  *See* Part III(B), *infra*.

22          Plaintiffs cannot meet this standard.  Contrary to the allegation in the Complaint,

23   Mr. Chanos did not say that Mr. Wynn or Wynn Resorts had violated the FCPA.  In answer to a

24   question by the moderator of the panel on which he sat, Mr. Chanos merely explained why he sold

25   his stock investments in Macau casino operators:  "*risk . . . under Foreign Corrupt Practices Act*

26   *and . . . aspects of exactly how business is done there*."  This statement of the investment risk is not

27   ─────────────────

28   [2] To assist the Court, we have had a certified transcript prepared of the entire video.  RJN Ex. 1.
The full video may be accessed at http://fora.tv/2014/04/25/sneak_preview_panel_pbs_frontlines_
the_gods_of_gambling.

an accusation of criminal conduct against *any* Macau casino operator, let alone Mr. Wynn or Wynn Resorts.  *See* Part III(C)(1), *infra*.  It is a statement of Mr. Chanos's perception of investment risk, which is an opinion that cannot be the basis of a claim for defamation.  *See* Part III(C)(2), *infra*.

Moreover, Mr. Wynn and Wynn Resorts are public figures.  To prevail on their claim for slander, they must demonstrate not only that Mr. Chanos made a false statement of fact about Mr. Wynn and Wynn Resorts, but that he knew the statement was false or that he made it with a reckless disregard for its truth or falsity.  Plaintiffs cannot demonstrate that what Mr. Chanos did say at the symposium was somehow knowingly or recklessly false.  As discussed in a report by a Congressional commission, as raised in numerous articles in the financial world, and as conceded *by Wynn Resorts' own regulatory filings*, Macau casino operators *did and do* have risk under the FCPA and "aspects of exactly how business is done there."  *See* Part III(C)(3), *infra*.

Finally, Mr. Chanos's statements at the symposium are privileged under Section 47(c) of the California Civil Code as statements to an "interested person."  Mr. Chanos only spoke in response to a question from the moderator, and his audience—journalists, academics, and law enforcement officials—had a professional interest in Mr. Chanos's statements.  Mr. Chanos was only providing his opinion on investment risk as a business matter and bore no ill will to either Mr. Wynn or Wynn Resorts.  *Taus v. Loftus*, 40 Cal. 4th 683, 721 (2007) (statement at professional conference held privileged, where there was no evidence of malice).  *See* Part III(C)(4), *infra*.

This Special Motion to Strike should be granted and Mr. Chanos should be awarded his attorneys' fees and costs.

## II.  FACTUAL BACKGROUND.

### A.  James Chanos.

Mr. Chanos is an owner and manager of a private investment management firm, Kynikos Associates LP ("Kynikos").  Declaration of James Chanos ("Chanos Decl.") ¶2.  While Mr. Chanos and Kynikos sometimes buy securities that are expected to increase in value, Mr. Chanos is famous for specializing in an investment strategy designed to profit from finding fundamentally overvalued securities, mostly through a technique known as short selling.  RJN Ex. 2 (*Lessons Learned from Enron's Collapse: Auditing the Accounting Industry; Hearings Before the H. Comm. on Energy and*

*Commerce*, H. Hrg. 107-83 at 71-78 (2002) (Statement of James S. Chanos, Kynikos Associates Ltd.)) at 71.  Short selling is only profitable if it is based on accurate information.  Accordingly, Mr. Chanos and Kynikos take trading positions after conducting analysis and investigation.  Chanos Decl. ¶¶2-3.

Mr. Chanos and Kynikos's history of trading Enron stock is a well known example of how short sellers profit through investigation and research, and how that can benefit the public. Mr. Chanos and his investment team at Kynikos investigated and analyzed Enron's publicly available financial information, and spoke with analysts and reporters about the company before and after establishing a large, and ultimately very profitable, short position in Enron.  *Id.* ¶3. Mr. Chanos's conclusions about Enron were prescient.  He is "now widely credited with being the first on Wall Street to blow the whistle on the biggest bankruptcy in U.S. history, Enron."  RJN Ex. 3 (Jonathan R. Laing, *The Bear that Roared: How short-seller Jim Chanos helped expose Enron*, Barron's, Jan. 28, 2002) at 3.

In addition to managing his investment firm, Mr. Chanos lectures at the Yale School of Management and teaches an annual seminar at the Stanford University Graduate School of Business.  Chanos Decl. ¶4.  Mr. Chanos has stayed at the Wynn Las Vegas and Encore at Wynn Las Vegas hotels, and briefly met Mr. Wynn there and at one fundraising dinner.  *Id.* ¶9.  Their contact has always been cordial.  Mr. Chanos has no ill will or hatred towards Mr. Wynn or Wynn Resorts.  *Id.* ¶10.

### B.      Stephen Wynn And Wynn Resorts.

"Stephen A. Wynn is a well-known public figure in Nevada" (*Wynn v. Smith*, 16 P.3d 424, 426 (Nev. 2001)) and one of the richest men in the world.  RJN Ex. 4 (Howard Stutz, *Top 20 Locals with Influence,* Las Vegas Bus. Press, Sept. 19, 2011).  He is the chairman and chief executive officer of Wynn Resorts, a publicly traded Nevada corporation listed on the NASDAQ, that "is a leading developer, owner and operator of destination casino resorts."  RJN Ex. 5 (Wynn Resorts 2013 Form 10-K ("Wynn Resorts 2013 10-K") at 3.  Wynn Resorts owns and operates casinos in Las Vegas and, through a 72% owned subsidiary, Wynn Macau, Limited, in the Macau Special Administrative Region of the People's Republic of China.  *Id.*; *id.* Ex. 6 (Wynn Macau, Limited,

*Disclosure of Unaudited Financial Statements of Wynn Resorts, Limited and Wynn Macau, Limited*, March 2, 2014).

For a number of years, Wynn Resorts has been dogged by private accusations and public inquiries and investigations into possible criminal and civil violations, including violations of the FCPA.  RJN Ex. 5 (Wynn Resorts 2013 10-K) at 19-21, 24.  Reports of such accusations and investigations have been widely reported in the media.  These accusations and investigations include the following:

- In May 2011, Mr. Wynn acknowledged in an interview that the U.S. Department of Justice, Securities and Exchange Commission (the "SEC"), Hong Kong regulators, Singapore regulators, Nevada regulators, and Macau regulators were all scrutinizing the Macau gaming industry for possible legal violations, including violations of the FCPA. RJN Ex. 7 (Duncan Mavin & Kate O'Keeffe, *Wynn Resorts CEO Doubles Down on China Casino Business*, Wall St. J., May 23, 2011).

- Since February 2012, Wynn Resorts has been reported to be in litigation with a former Wynn Resorts director and beneficial shareholder named Kazuo Okada.  RJN Ex. 5 (Wynn Resorts 2013 10-K) at 35-39; *id.* Ex. 8 (Nathaniel Parish Flannery, *Wynn-sanity: A Power Struggle at Macau Gambling Giant Wynn Resorts Puts Shareholder Value at Risk*, Forbes, March 12, 2012 ("Forbes Article")).  Based on a report prepared by the former FBI Director Louis Freeh, Wynn Resorts sued Mr. Okada for breach of fiduciary duty by violating the FCPA.  RJN Ex. 5 (Wynn Resorts 2013 10-K) at 35-39.

- Mr. Okada in turn alleged Wynn Resorts violated the FCPA through a donation to the University of Macau.  *Id.* at 40; RJN Ex. 9 (Wynn Resorts 2012 Form 10-K ("Wynn Resorts 2012 10-K") at 39; RJN Ex. 7 (Forbes Article).

- In February 2012, the media reported that the SEC and Department of Justice would likely investigate Wynn Resorts for FCPA violations as a result of the dispute between Wynn Resorts and Mr. Okada.  RJN Ex. 10 (*War at Wynn Opens a Legal Can of Worms*, *N.Y. Times*, Feb. 27, 2012).

- In July 2012, it was reported that the SEC was in fact investigating Wynn Resorts for its donation to the University of Macau.  RJN Ex. 11 (Kate O'Keeffe, *In Wynn's Macau Deal, a Web of Political Ties*, Wall St. J., July 1, 2012).

- The United States Department of Justice has acknowledged in publicly available court filings that it has been conducting a criminal investigation into Wynn Resorts relating to Wynn Resorts' donation to the University of Macau.  RJN Ex. 5 (Wynn Resorts 2013 10-K) at 40; RJN Ex. 12 (United States of America's Motion to Intervene and For Temporary and Partial Stay of Discovery and For Order Shortening Time, District Court, Clark County, Nevada, filed April 8, 2013) at 9 n.1.

- Wynn Resorts has reported that it is defending a shareholder derivative lawsuit based on alleged failure to disclose potential FCPA violations related to Wynn Resorts' activities in Macau.  RJN Ex. 5 (Wynn Resorts 2013 10-K) at 40-41.

- In November 2013, the U.S.-China Economic and Security Review Commission issued its Annual Report to Congress that disclosed serious issues with corruption in the casino industry in Macau.  The Commission noted that Wynn Resorts, like the other two American casinos operating in Macau, had "come under various forms of regulatory scrutiny regarding their Macau operations."  RJN Ex. 13 (U.S.-China Commission Report) at 368.  The report further described how the Macau police had detained a partner of one company Wynn Resorts used to solicit and facilitate gaming by casino customers in exchange for a commission paid by Wynn Resorts.  *Id.* at 369.  The Commission met with and presented statements from Wynn Resorts and one of the other U.S.-licensed casinos operating in Macau.  *Id.* at 370-71.  The Commission concluded that U.S.-licensed casinos operating in Macau faced legal risks because of their connections, through gaming promoters, to criminal groups, and that the Commission could not evaluate whether the casinos were taking adequate measures to distance themselves from illegal activity.  *Id.* at 384-85.[3]

---

[3] The Commission did not find evidence of wrongdoing by any U.S.-based casino company, but it noted in its report that it was not seeking such evidence.  RJN Ex. 13 at 355.

1         • In December 2013, the media reported that the Massachusetts gaming commission had

2           sought assurance from Wynn Resorts, as a condition of receiving a gaming license, that

3           Wynn Resorts' activities in Macau are responsible business practices.  RJN Ex. 14

4           (Steve LeBlanc, *Panel: Wynn Resorts Suitable To Open Casino in Massachusetts*, Las

5           Vegas Sun, Dec. 16, 2013).

6         • Macau's anti-corruption agency announced in July 2014 that it was investigating Wynn

7           Resorts' Macau operations.  RJN Ex. 15 (James Detar, *Macau Corruption Agency Opens*

8           *Probe of Wynn Resorts*, Investor's Bus. Daily, July 11, 2014, at 1.

9

10      **C.**    **University Of California, Berkeley Graduate School Of Journalism's Investigative Reporting Symposium.**

11      Since 2007, the U.C. Berkeley Graduate School of Journalism has held an annual

12 symposium to discuss issues confronting the field of investigative reporting.  Declaration of

13 Kenneth G. Hausman ("Hausman Decl.") Ex. A (symposium webpage) at 1.  This event is

14 invitation-only, and attracts "top journalists, law enforcement and government officials to address

15 the critical issues confronting" the field of investigative journalism.  *Id.*  It also attracts academics

16 and others motivated to support "journalism in the public interest."  *Id.*  Lowell Bergman is a

17 professor at the U.C. Berkeley Graduate School of Journalism, was a producer for 60 Minutes and a

18 reporter for the New York Times, has won a Pulitzer Prize, and currently is a producer for PBS

19 Frontline.  Hausman Decl. Ex. B (Bergman bio).  He invited Mr. Chanos to speak on a panel

20 discussing an upcoming PBS Frontline documentary that will air on PBS.  Chanos Decl. ¶5.  The

21 documentary focuses on the gambling industry in Macau, where large amounts of money flow out

22 of China through casinos and businesses purportedly associated with Chinese organized crime

23 groups known as "triads."  One member of the panel, Steve Vickers, was formerly the head of the

24 Royal Hong Kong Police's Criminal Intelligence Bureau and now operates a private investigation

25 and consulting business in Hong Kong.  RJN Ex. 1 (Transcript) at 1, 3.  Another was David

26 Barboza, a New York Times reporter who focuses on corruption in China.  *Id.* at 3.  Mr. Chanos

27 was the third panelist, and presented the perspective of the investment industry.  *Id.*  The last

28

1   panelist, who appeared by phone from jail, was Raymond "Shrimp Boy" Chow, a convicted felon

2   with knowledge of the "triads." *Id.* at 2.

3        The moderator, panelists and audience at the symposium viewed and discussed clips from

4   the upcoming Frontline documentary, including discussions of corruption, the destabilizing effects

5   of currency pouring into and out of China, the Macau gambling industry's connections to the triads,

6   and American gambling companies operating in Macau. *See id.* After viewing one clip,

7   Mr. Chanos had the following exchange with Mr. Bergman, the moderator of the panel discussion:

8        MR. BERGMAN: . . . But, Mr. Chanos, you're famous, obviously, for
9        shorting Enron, why are you shorting Macau in China?

10       MR. CHANOS: . . . [W]e were actually long Macau for a while. And when
         we first put our short bet on in China in late '09, 2010 that David [Barboza of the
         *New York Times*] wrote about, we were actually long Macau casinos on the thought
11       that I wanted to be long corruption and short property. And that actually worked out
         pretty well, but even I got a little nervous the deeper we dug into Macau and the
12       more I got concerned that although I was long, the U.S. casino operators, like
         Mr. Adelson and Mr. Wynn, I began to really get concerned about the risk I was
13       taking with clients' money under Foreign Corrupt Practices Act and a variety of
         other, you know, aspects of exactly how business is done there. And, although, they
14       hide behind the facade of the junket companies, increasingly, from a -- if not across
         the legal line, to use my friend Bethany McLean's term, it was "legal fraud."

15       While they might be adhering to every aspect of legal requirements in what
16       they were doing, there was still an attempt to mislead and an attempt to obfuscate
         and I just couldn't get comfortable with that.

17       So we got out of our Macau casinos and now, I think, more importantly, I
18       think, we're looking at the Macau situation as a conduit for, in effect, wholesale
         capital flight on China which has implications for the banking system and the credit
19       system there. (*Id.* at 5-7.)

20  **III.   LEGAL ARGUMENT.**

21       **A.     Overview Of Section 425.16.**

22       California anti-SLAPP motions are available to litigants proceeding in federal court.

23  *Thomas v. Fry's Elecs., Inc.*, 400 F.3d 1206, 1206-07 (9th Cir. 2005) (per curiam). The anti-SLAPP

24  law involves a two-step process for determining whether a claim is barred. *Riese v. Cnty. of Del*

25  *Norte*, 12-CV-03723-WHO, 2013 WL 4732603, at *2 (N.D. Cal. Sept. 3, 2013). Mr. Chanos is

26  required to make a prima facie showing that his statements were made "in furtherance of

27  constitutional rights of . . . free speech in connection with a public issue, as defined by the statute."

28  *Wang v. Wal-Mart Real Estate Bus. Trust*, 153 Cal. App. 4th 790, 800 (2007); *Riese*, 2013 WL

1    4732603 at *2.  Once Mr. Chanos does so, the burden shifts to Plaintiffs to demonstrate a

2    probability that they will prevail on their claim.  *Riese*, 2013 WL 4732603, at *2-3; *Freeman v.*

3    *Schack*, 154 Cal. App. 4th 719, 726 (2007).  Plaintiffs must demonstrate that the complaint is both

4    legally sufficient and supported by a prima facie showing of admissible evidence to sustain a

5    favorable judgment if the facts favorable to them are credited.  *Taus v. Loftus*, 40 Cal. 4th 683, 713-

6    14 (2007).  The purpose of the statute "is to curtail the chilling effect meritless lawsuits may have

7    on the valid exercise of free speech and petition rights, and the statute is to be interpreted broadly to

8    accomplish that goal."  *Schaffer v. City & Cnty. of San Francisco*, 168 Cal. App. 4th 992, 997-98

9    (2008).

10
11           **B.      Plaintiffs' Claim Against Mr. Chanos Arises From His Statements On A Public
                       Issue Or Topic Of Public Interest.**

12           In the first step of the anti-SLAPP analysis, "the court decides whether the defendant has

13   made a threshold showing that the challenged cause of action is one arising from protected activity,

14   that is, by demonstrating that the facts underlying the plaintiff's complaint fits one of the categories

15   spelled out in section 425.16, subdivision (e)."  *Hecimovich v. Encinal Sch. Parent Teacher Org.*,

16   203 Cal. App. 4th 450, 463 (2012).  In conducting this analysis, courts have recognized that

17   "defamation is the very first of the favored causes of action in SLAPP suits."  *Id.* (citation and

18   internal quotation marks omitted).

19           Section 425.16(e)(4) defines protected activities to include "any . . . conduct in furtherance

20   of the exercise of the . . . constitutional right of free speech in connection with a public issue or an

21   issue of public interest."  Cal. Code Civ. Proc. §425.16(e)(4).  This provision does not require that

22   the statements be made in a public forum, but instead protects "private communications concerning

23   issues of public interest."  *Hailstone v. Martinez*, 169 Cal. App. 4th 728, 736 (2008).  "Like the

24   SLAPP statute itself, the question whether something is an issue of public interest must be

25   construed broadly."  *Hecimovich*, 203 Cal. App. 4th at 464-65 (citation and internal quotation marks

26   omitted).  There is no statutory definition of public interest, but courts have identified three general

27   categories of statements that qualify: (1) statements about "a person or entity in the public eye,"

28   (2) statements about "conduct that could affect large numbers of people beyond the direct

1    participants," and (3) statements about "a topic of widespread public interest." *Integrated*

2    *Healthcare Holdings, Inc. v. Fitzgibbons*, 140 Cal. App. 4th 515, 525 (2006) (citation and internal

3    quotation marks omitted); *see also Hecimovich*, 203 Cal. App. 4th at 464-65 ("An issue of public

4    interest is *any issue in which the public is interested*") (emphasis in original; citation and internal

5    quotation marks omitted).

6         Mr. Chanos's comments at the university symposium fit within each of the specified

7    protected categories of statements; they are a canonical example of a statement on a topic of public

8    interest. *First*, the setting for Mr. Chanos's comments bears all the hallmarks of discourse on topics

9    of public interest. The event where he spoke was an educational panel symposium organized by the

10   investigative journalism program at the University of California, Berkeley Graduate School of

11   Journalism. Chanos Decl. ¶5. The occasion for the symposium was a documentary to be shown on

12   PBS about gambling in Macau. *Id.* ¶6. Mr. Chanos was commenting as part of a panel composed

13   of a journalism professor, a former law enforcement officer, a *New York Times* reporter, and a

14   source appearing by phone from jail who was speaking publicly about the activities of Chinese

15   "triads." RJN Ex. 1 (Transcript) at 1-3. The audience for Mr. Chanos's comments included

16   prominent journalists from across the country, law enforcement officials, and academics. Chanos

17   Decl. ¶6. Any one of these facts alone would be sufficient to qualify Mr. Chanos's remarks as

18   concerning a public issue. Cumulatively, they are dispositive. *See, e.g.*, *Taus v. Loftus*, 40 Cal. 4th

19   at 712-13 ("no question" that claims based on investigating validity of academic article, writing and

20   publishing responsive academic articles, and speaking at professional conferences and meetings

21   "plainly fell within the scope of the anti-SLAPP statute"); *Harkonen v. Fleming*, 880 F. Supp. 2d

22   1071, 1080 (N.D. Cal. 2012) (parties conceded that statements in article in medical journal, public

23   lectures at universities, and publication of those lectures on internet involved protected activity).

24         *Second*, the particular subject of the panel symposium and of Mr. Chanos's comments—the

25   gambling business in Macau—is a matter of public interest. As the 11th Circuit Court of Appeals

26   held in connection with a "20/20" documentary raising allegations of corruption in the jai alai

27   industry, "[t]he public is legitimately interested in all matters of corruption, particularly when the

28   corruption involves gambling in a highly-regulated industry and the effects of the corruption could

1    cost taxpayers and the many members of the general public who patronize the industry millions of

2    dollars." *Silvester v. Am. Broad. Cos.*, 839 F.2d 1491, 1493 (11th Cir. 1988).  Further, California

3    courts have expressly held that the public has an interest in the risk associated with investments in

4    publicly traded companies.  *See, e.g.*, *GetFugu, Inc. v. Patton Boggs LLP*, 220 Cal. App. 4th 141,

5    152 (2013) ("public interest" threshold for anti-SLAPP motion satisfied where alleged defamatory

6    statement concerned investment scam in publicly traded company: "[T]he common interest of all

7    Americans in a growing economy that produces jobs, improves our standard of living, and protects

8    the value of our savings means there is a public interest in protecting investors so as to promote the

9    capital formation that is necessary to sustain economic growth") (citation and internal quotation

10   marks omitted); *Global Telemedia Int'l, Inc. v. Doe 1*, 132 F. Supp. 2d 1261, 1265 (C.D. Cal. 2001)

11   ("public interest" threshold for anti-SLAPP motion satisfied where defendant accused of making

12   defamatory statement in chat room regarding publicly traded company: "a publicly traded company

13   with many thousands of investors is of public interest because its successes or failures will affect

14   not only individual investors, but in the case of large companies, potentially market sectors or the

15   markets as a whole").

16

17       **C.    Plaintiffs Cannot Establish A Probability Of Prevailing On The Merits Of Their
             Claim Against Mr. Chanos.**

18       Because Mr. Chanos has established that Mr. Wynn and Wynn Resorts' claim against him

19   arises from protected free speech activities, the burden shifts to them to prove they are likely to

20   prevail on the merits of their claim of slander *per se*.  *Salma v. Capon*, 161 Cal. App. 4th 1275,

21   1283 (2008).  They must demonstrate that the complaint "'is both legally sufficient and supported

22   by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence

23   submitted by the plaintiff[s] is credited.'"  *Riese*, 2013 WL 4732603, at *3 (quoting *Hansen v. Cal.*

24   *Dep't of Corr. & Rehab.*, 171 Cal. App. 4th 1537, 1543 (2008)).  "The burden on the plaintiff[s] is

25   similar to the standard used in determining motions for nonsuit, directed verdict, or summary

26   judgment."  *Id.* at *3 (citing *Gilbert v. Sykes*, 147 Cal. App. 4th 13, 26 (2007)).  Plaintiffs' showing

27   must be made through competent and admissible evidence.  "'Thus, declarations that lack

28   foundation or personal knowledge, or that are argumentative, speculative, impermissible opinion,

1    hearsay, or conclusory are to be disregarded.'"  *Id.* (quoting *Gilbert*, 147 Cal. App. 4th at 26).

2    Finally, this Court can and should examine the publicly available video of the event along with the

3    certified transcript of it to determine Mr. Wynn and Wynn Resorts' probability of success on the

4    merits.  *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) ("In evaluating the context in which

5    the [allegedly defamatory] statement appeared, we must take into account 'all parts of the

6    communication that are ordinarily heard or read with it'") (citation omitted); *Hilton v. Hallmark*

7    *Cards*, 599 F.3d 894, 903 (9th Cir. 2010) (court should grant anti-SLAPP motion "if, as a matter of

8    law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish

9    evidentiary support for the claim"); *see also* Cal. Code Civ. Proc. §425.16(b)(2) ("In making its

10   determination, the court shall consider the pleadings, and supporting and opposing affidavits stating

11   the facts upon which the liability or defense is based.").[4]

12        Plaintiffs cannot carry this burden.  Contrary to the allegation in the Complaint, Mr. Chanos

13   never said that Mr. Wynn or Wynn Resorts had violated the FCPA.  *See* Part C(1), *infra*.

14   Mr. Chanos merely identified certain risks that influenced his investment behavior; statements of

15   opinion such as this cannot support a defamation claim.  *See* Part C(2), *infra*.  To the extent that

16   Mr. Chanos's statement contains any factual assertions at all about Mr. Wynn or Wynn Resorts,

17   Plaintiffs cannot show that the statement was false or that Mr. Chanos acted with malice, necessary

18   elements here given that Mr. Wynn and Wynn Resorts are public figures.  *See* Part C(3), *infra*.

19   Finally, Mr. Chanos's statement is privileged under California law because he was responding

20   without malice to a question and speaking to an audience about a matter of common interest.  *See*

21   Part C(4), *infra*.

22

23

24

25

26   _____

27   [4] *See also Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) ("Under the
     'incorporation by reference' rule of this Circuit, a court may look beyond the pleadings without
     converting the Rule 12(b)(6) motion into one for summary judgment."); *Sprewell v. Golden State*

28   *Warriors*, 266 F.3d 979, 988 (9th Cir.) ("The court need not . . . accept as true allegations that
     contradict matters properly subject to judicial notice or by exhibit"), *amended on other grounds*,
     275 F.3d 1187 (9th Cir. 2001).

1

2

**1.     Mr. Chanos Did Not Accuse Mr. Wynn Or Wynn Resorts Of Violating The FCPA.**

3

4

5

6

7

8

To prevail on their claim of slander *per se* (*see* Compl. ¶14), Mr. Wynn and Wynn Resorts must prove Mr. Chanos asserted as a fact "that Wynn and Wynn Resorts had violated the Foreign Corrupt Practices Act" (Compl. ¶12) and that the attendees at the symposium would have reasonably understood his statement as so asserting.  "[T]he dispositive question is whether a reasonable fact finder could conclude the published statement declares or implies a provably false assertion of fact." *Franklin v. Dynamic Details, Inc.*, 116 Cal. App. 4th 375, 385-86 (2004).

9

10

11

12

13

14

15

16

17

18

19

In fact, Mr. Chanos did not claim that Mr. Wynn or Wynn Resorts had violated the FCPA or make any factual assertion at all of FCPA violations.  Mr. Chanos's actual statement regarding the FCPA was that he had become "nervous" and "concerned" about "risks" U.S. casino operators faced under the FCPA and "a variety of other, you know, aspects of exactly how business is done there," which influenced his firm's decision to sell its holdings in Macau casino operators.  RJN Ex. 1 (Transcript) at 6.  Far from asserting that any Macau casino operators were violating the FCPA or any other law, Mr. Chanos actually said that such casino operators "might be adhering to every aspect of legal requirements in what they were doing," which is the precise *opposite* of what Plaintiffs allege he said.  *Id.*  No one present at the Berkeley symposium could reasonably have understood Mr. Chanos to have been making a factual assertion that either Mr. Wynn or Wynn Resorts had in fact committed violations of the FCPA.

20

21

22

23

24

25

26

27

28

The context and setting of Mr. Chanos's comment confirm this.  *See Underwager v. Channel 9 Australia*, 69 F.3d 361, 366 (9th Cir. 1995) (courts examine the context of a statement, including the general tenor of the entire work and the setting).  The other panelists, Mr. Vickers, Mr. Barboza, and Mr. Chow, all had personal knowledge and experience with Macau and China.  Mr. Bergman asked them to provide the factual background and their opinions.  Mr. Chanos, by contrast, was tasked with describing the macroeconomic and investment implications of what others' investigations had revealed.  Indeed, after discussing his decision to sell his firm's positions in Macau casino operators' stocks, Mr. Chanos went on to describe how Macau's role in allowing capital to leave China despite the Chinese government's attempts to stop it could lead to potential

destabilizing effects for the Chinese currency.  *See* RJN Ex. 1 (Transcript) at 7-9.  Mr. Chanos's role on the panel confirms that he was there to explain how risks inherent in the Macau gambling industry translated into investment decisions.

### 2. Mr. Chanos Gave His Opinion Of Investment Risk, Which Is Not Actionable.

What Mr. Chanos *did* say at the symposium was a statement of opinion that cannot be the basis of a claim for defamation.

Because a defamatory statement "must contain a provable falsehood, courts distinguish between statements of fact and statements of opinion for purposes of defamation liability."  *Summit Bank v. Rogers*, 206 Cal. App. 4th 669, 695 (2012).  Mr. Chanos's statement of his concern regarding the risk of continued investment in the Macau casino sector was a non-actionable expression of opinion and not an assertion of fact.  This can be seen from the fact that even if Plaintiffs could prove that they had *not* violated the FCPA, that proof would not contradict in any way what Mr. Chanos said.  Investment managers deal in risk; Mr. Chanos's opinion as to the level of risk associated with investment in companies that do business in Macau cannot be the basis for a claim of defamation.  *See, e.g.*, *Amaranth LLC v. J.P. Morgan Chase & Co.*, 954 N.Y.S.2d 531,532 (App. Div. 2012) (bank's "concerns about the impact of any potential bridge loan to the Fund on preference risk in the event of the Fund's bankruptcy . . . is not defamatory, as it simply expresses an opinion based on information available to all potential parties to the potential Fund transaction"); *Compuware Corp. v. Moody's Investors Servs., Inc.*, 499 F.3d 520, 528-29 (6th Cir. 2007) (credit rating held to be "a predictive opinion, dependent on a subjective and discretionary weighing of complex factors" that did not communicate "any provably false factual connotation").

### 3. Plaintiffs Cannot Prove Mr. Chanos Acted With Malice.

Mr. Wynn and Wynn Resorts are public figures.  Even if there had been a false statement about them, to prevail they would have to demonstrate by clear and convincing evidence that Mr. Chanos acted with malice, meaning that he made the false statement knowingly or with reckless disregard for its truth or falsity.  *Underwager*, 69 F.3d at 365, 368.  Plaintiffs cannot meet this burden.  The undisputed, public record, including admissions by Plaintiffs themselves, demonstrates

1    that investment in Wynn Resorts *was* subject to investment risk due to possible FCPA and other

2    violations.

3                    **a.       Mr. Wynn And Wynn Resorts Are Public Figures.**

4             To determine whether a defamation plaintiff is a public figure, courts evaluate the plaintiff's

5    degree of notoriety and influence, his previous press coverage, whether he has embraced or rejected

6    media attention, whether his prominence in the media is voluntary, and his ability to resort to the

7    media to correct misstatements made about him.  *See Waldbaum v. Fairchild Publ'ns, Inc.*, 627

8    F.2d 1287, 1295 (D.C. Cir. 1980).  By any of these measures, Mr. Wynn and Wynn Resorts are

9    public figures.  Indeed, as noted, the Nevada Supreme Court has held that Mr. Wynn is a public

10   figure.  *Wynn v. Smith*, 16 P.3d 424, 426 (Nev. 2001) ("Stephen A. Wynn is a well-known public

11   figure in Nevada.").  Both Mr. Wynn and Wynn Resorts receive extensive media attention, are

12   reputed as having broad influence, and can and do resort to the media to respond to public criticism

13   or attention from other public officials and figures.  *See* RJN Ex. 5 (Wynn Resorts 2013 10-K) at 3

14   (Wynn Resorts "is a leading developer, owner and operator of destination casino resorts"); RJN

15   Ex. 4 (*Top 20 Locals With Influence* article describing Mr. Wynn as an influential Nevadan); RJN

16   Ex. 16 (*When Wynn speaks, gaming listens* article, noting how Mr. Wynn is a leader in gaming

17   industry); RJN Ex. 17 (Time magazine article describing Mr. Wynn as one of "the 100 men and

18   women whose power, talent or moral example is transforming our world" through casinos operated

19   by Wynn Resorts); RJN Ex. 18 (transcript of Mr. Wynn's appearance as founder and CEO of Wynn

20   Resorts on national news network to respond to statements by President Obama's campaign); RJN

21   Exs.19-22 (Wynn Resorts press releases regarding Mr. Wynn and Wynn Macau operations).

22            Moreover, even if Mr. Wynn and Wynn Resorts are not public figures for all purposes, they

23   are limited public figures for the purpose of the public debate over gaming in the United States and

24   abroad.  Speech concerns a limited public figure if there is a public debate on an issue, the figure

25   has taken a voluntary act to influence the debate, and the speech relates to the figure's participation

26   in the debate.  *Waldbaum*, 627 F.2d at 1295-96.  There has long been a public controversy over

27   casino operations in Macau.  *See* Part II(B), *supra*.  Mr. Wynn and Wynn Resorts sought and

28   acquired prominent positions in the gaming industry in the United States and Macau and used those

1   positions to place themselves at the center of that public debate over gaming in the United States

2   and Macau.  RJN Ex. 23 ("*Steve Wynn rails against U.S. regulatory process, praises Chinese*

3   *policies*," Boston Herald, Oct. 2, 2014); Ex. 24 (*Casinos Get No Quarter---Operators Rebut*

4   *Regulators' Efforts to Challenge Expansion*, Wall St. J., Oct. 29, 2013); Ex. 25 (*Wynn tells board:*

5   *Butt out of Macau*, Boston Herald, Oct. 18, 2013); *see also Silvester*, 839 F.2d at 1497 (businesses

6   and individuals, by "voluntarily entering a strictly regulated, high-profile industry in which there

7   were few major participants," assumed a prominent position and "invited public scrutiny,

8   discussions, and criticism"); *Mosesian v. McClatchy Newspapers*, 233 Cal. App. 3d 1685, 1701

9   (1991) (horse racing license holder was limited public figure for assuming central role in debate

10   over horse gambling, which was matter of public interest because of potential connections to

11   criminality); *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 266-67 (9th Cir. 2013) (defining

12   defamation of limited public figures as concerning limited public figures' voluntary participation in

13   an ongoing public controversy for purposes of influencing controversy's outcome).

### b.      Mr. Chanos's Statements Were Accurate And Made With A Reasonable Basis.

16         For the reasons given above, Mr. Chanos did not make an assertion of fact that Plaintiffs had

17   violated the FCPA, but merely indicated his concern regarding the level of risk involved in

18   investing in Macau casino operators.  But even if his statements regarding such risk could be

19   evaluated as statements of fact, Mr. Wynn and Wynn Resorts cannot show—let alone by clear and

20   convincing evidence—that Mr. Chanos's statements were false or that he made them recklessly.

21         Wynn Resorts *itself* has admitted for at least the last three years that there *is* a risk that it

22   could be found in violation of the FCPA.  Wynn Resorts' Form 10-K for 2013 expressly says that

23   one "Risk Factor" of investing in Wynn Resorts is that it could be found to have violated anti-

24   corruption statutes: "A finding by regulatory authorities that Mr. Okada violated the FCPA on

25   [Wynn Resorts] property and/or otherwise involved [Wynn Resorts] in criminal or civil violations

26   could result in actions by regulatory authorities against [Wynn Resorts]."  RJN Ex. 5 (Wynn Resorts

27   2013 10-K) at 18-19; *see also* RJN Ex. 9 (Wynn Resorts 2012 10-K) at 20 (same); RJN Ex. 26

28

1     (Wynn Resorts 2011 Form 10-K) at 25 (same).[5]  Countless media reports make the same point.  For

2     example, in February 2012, the *New York Times* reported that Wynn Resorts' charitable donation to

3     the University of Macau "could result in a violation" of the FCPA, and that "there is a possibility

4     that Wynn [Resorts'] operation [in Macau] will be subjected to" Department of Justice scrutiny for

5     possible FCPA violations.  RJN Ex. 9 (*War at Wynn Opens A Legal Can of Worms*) at 3-4.  In July

6     2012, it was reported that the SEC was investigating Wynn Resorts for that donation.  *Id.* Ex. 10 (*In*

7     *Wynn's Macau Deal, a Web of Political Ties*).  In April 2013, the Department of Justice itself stated

8     in a public court filing that it was conducting a criminal investigation into Wynn Macau's donation

9     to the University of Macau.  *Id.* Ex. 11 (USA's Motion to Intervene and For Stay) at 9 n.1.  And,

10    reports of anti-corruption investigations have haunted Wynn Resorts even after Mr. Chanos made

11    his comment.  In July 2014, Macau's Commission Against Corruption was reported to be

12    investigating how Macau acquired land for its latest casino.  RJN Ex. 14 (*Macau Corruption*

13    *Agency Opens Probe of Wynn Resorts*).

14           Mr. Chanos's firm sold its Macau casino operators' stock after conducting research.  Chanos

15    Decl. ¶7.  Media reports like those described above provided Mr. Chanos and his firm a sound basis

16    for concluding at the time his firm sold the Macau casino operators' stock that there were risks

17    associated with the FCPA and how business is done there.  *Id.*  Wynn Resorts certainly cannot show

18    Mr. Chanos recklessly avoided reliable information that would have pointed to the opposite

19    conclusion.  The very notion does not make sense: Mr. Chanos makes his living by trading on the

20    best information he can find.  He has every reason to seek out, not avoid, reliable information, so as

21    to make better trades for himself and his clients.  Any claim that Mr. Chanos acted with malice is

22    specious.

23

24

25    ─────────────────────
      [5] Even an investigative report sponsored by Wynn Resorts acknowledged the risk of FCPA

26    violations.  Freeh Sporkin & Sullivan, LLP ("FSS"), a firm established by former FBI Director and
      federal judge Louis Freeh and two other former federal judges, was retained by Wynn Resorts to

27    conduct an independent investigation into the activities of Mr. Okada, who (as mentioned above) is
      a former Wynn Resorts director and significant beneficial shareholder.  That investigation

28    culminated in a report by FSS to the Compliance Committee of Wynn Resorts that was publicly
      filed in February 2012.  The report states that "the investigation has produced substantial evidence"
      of "prima facie violations of the [FCPA]" by Okada.  RJN Ex. 27 at 25-26.

### 4.   Mr. Chanos's Statements Were Privileged Under California Law.

Plaintiffs have alleged that Mr. Chanos spoke to a "private audience of several individuals who were attending an 'invitation only' event" where Mr. Chanos was speaking.  Compl. ¶13. Pursuant to Section 47(c) of the California Civil Code, Plaintiffs' claim also must fail because Mr. Chanos's statements were made to an interested audience without malice and, as such, are privileged and non-actionable under California law.

Section 47(c), commonly referred to as the "common interest privilege," provides, in pertinent part, that "[a] privileged publication or broadcast is one made . . . [i]n a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, or (3) who is requested by the person interested to give the information."  Cal. Civ. Code §47(c).  As the California Supreme Court has repeatedly held, the common interest privilege applies precisely to the kind of communication at issue here. *See Taus v. Loftus*, 40 Cal. 4th 683, 720-21 (2007) (citing cases).  In *Taus,* the Court considered a defamation claim against a psychology professor and author based on statements that the defendant made at a professional conference to an audience of other mental health professionals.  *Id.* at 721. The Court concluded that it was "clear" that the statement fell within the common interest privilege.

In the present case, as in *Taus*, Mr. Chanos spoke at an academic event, this one dedicated to discussion of gambling in Macau.  The "invitation only" audience consisted of journalists, academics, and law enforcement officials, all of whom were "interested" because of their professional interest in investigative journalism such as that discussed at the symposium.  Chanos Decl. ¶6; *Institute of Athletic Motivation v. Univ. of Ill.*, 114 Cal. App. 3d 1, 12 (1980) (defining "interested" for the purposes of the common interest privilege as a professional interest in the truth or falsity of the allegedly defamatory communication).  Moreover, Mr. Chanos only spoke in response to a question from the moderator about his investment decisions; he did not volunteer the information.  Chanos Decl. ¶7.

To overcome this privilege, Plaintiffs would have to prove actual malice, which is, if anything, even more stringent than constitutional malice.  *Brown v. Kelly Broad., Inc.*, 48 Cal. 3d

711, 745 (1989) (malice for purposes of common interest privilege is different from and arguably requires a greater degree of fault than constitutional malice).  Plaintiffs must prove Mr. Chanos's statement "was motivated by hatred or ill will towards" Mr. Wynn or Wynn Resorts, or that Mr. Chanos "lacked reasonable grounds for belief in the truth of the [statement] and thereafter acted in reckless disregard of" Mr. Wynn and Wynn Resorts' rights.  *Taus*, 40 Cal. 4th at 721 (citation and internal quotation marks omitted).  This inquiry focuses on Mr. Chanos's state of mind, and requires proof of more than mere negligence.  *Noel v. River Hills Wilsons, Inc.*, 113 Cal. App. 4th 1363, 1370-71 (2003).  Mr. Chanos only loses the protection of the common interest privilege if he exhibited "a reckless or wanton disregard for the truth, so as to reasonably imply a willful disregard for or avoidance of accuracy."  *Id.* at 1371 (citation and internal quotation marks omitted).

Just as Mr. Wynn and Wynn Resorts have no evidence of knowledge or reckless disregard for the truth or falsity of his statement regarding the risk of investing Macau casino operations, they have no evidence that Mr. Chanos bore Mr. Wynn or Wynn Resorts any ill will or had reckless disregard for their rights.  Mr. Chanos has only met Mr. Wynn on a few occasions and harbors no animus towards him or Wynn Resorts.  *See* Chanos Decl. ¶¶9-10.  Mr. Chanos' statements at the Berkeley symposium are absolutely privileged under California law.

### D.     Mr. Chanos Is Entitled To Recover Attorneys' Fees And Costs In Connection With This Motion.

"[A] prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs."  Cal. Code Civ. Proc. §425.16(c).  This attorneys' fees provision is mandatory because it "is designed to compensate defendants for the cost of defending the suit . . . ."  *Bernardo v. Planned Parenthood Fed'n of Am.*, 115 Cal. App. 4th 322, 361 (2004) (citing Section 425.16) (emphasis added).  Mr. Chanos is entitled to attorneys' fees and costs even though this anti-SLAPP motion is being asserted in federal court.  *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 973 (9th Cir. 1999).

**IV.    CONCLUSION.**

       For all the reasons given, Plaintiffs' Complaint should be dismissed and they should be ordered to reimburse Mr. Chanos for the attorneys' fees and costs he has been forced to incur in connection with this Motion.

Dated:  October 20, 2014          Respectfully,

                                          ARNOLD & PORTER LLP

                                          By:   */s/ Kenneth G. Hausman*
                                                  KENNETH G. HAUSMAN
                                                    DOUGLAS A. WINTHROP
                                                    JULIAN Y. WALDO

                                          Attorneys for Defendant JAMES CHANOS

Dated:  October 20, 2014          BOSTWICK LAW

                                          By:   */s/ Gary L. Bostwick*
                                                    GARY L BOSTWICK

                                          Attorneys for Defendant JAMES CHANOS