UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

STEPHEN WYNN, et al.,

          Plaintiffs,

    v.

JAMES CHANOS,

          Defendant.

Case No. 14-cv-04329-WHO

**ORDER GRANTING MOTION TO DISMISS**

Re: Dkt. No. 16

Plaintiffs Stephen Wynn and Wynn Resorts, Ltd. (collectively, "Wynn") allege that defendant James Chanos falsely stated that Wynn violated the Foreign Corrupt Practices Act ("FCPA") at a symposium at the University of California at Berkeley. That is not what Chanos said. I find that Chanos's statements regarding Wynn and the FCPA violations do not constitute slander per se and were protected opinions, not assertions of fact. In addition, the complaint does not adequately plead actual malice. Chanos moves to dismiss and also to strike under California's anti-SLAPP statute, claiming that his speech is a matter of public interest and that Wynn's defamation claim fails as a matter of law.[1] Because Chanos is correct, I GRANT the motion to dismiss.

## BACKGROUND

Stephen Wynn is the Chief Executive Officer and Chairman of the Board of Wynn Resorts, a publicly traded corporation that develops, owns and operates resorts in Las Vegas and Macau.

---

[1] Because I dismiss the Complaint with leave to amend, I do not address the merits of Chanos's Motion to Strike at this point and DENY it without prejudice. *See Verizon Delaware, Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004); *Art of Living Found. v. Does*, No. 10-CV-05022-LHK, 2011 WL 2441898, at *9 (N.D. Cal. June 15, 2011). Chanos may re-raise the motion after the time for pleadings has passed or if he otherwise "prevails" on his claim. *See Stutzman v. Armstrong*, No. 2:13-CV-00116-MCE, 2013 WL 4853333, at *21 (E.D. Cal. Sept. 10, 2013).

United States District Court
Northern District of California

1   Compl. ¶¶ 2-3 (Dkt. No. 1); Mot. Dismiss at 3 (Dkt. No. 16).  Chanos is the owner and manager of

2   a private investment management firm.  Mot. Strike at 3 (Dkt. No. 11).  He is well known for his

3   "short selling" investment strategy, which he notably used to profit from trading Enron stock.[2]  *Id.*

4   at 3-4.  Chanos also lectures at Yale and Stanford graduate schools.  *Id.* at 4.

5         Chanos was invited to participate in an annual symposium for investigative reporting

6   concerning the gambling industry, corruption, and organized crime in China.  Mot. Strike at 7-8.

7   This event featured a panel including Chanos, the former head of the Royal Hong Kong Police's

8   Criminal Intelligence Bureau, a New York Times reporter, and a convicted felon associated with

9   organized crime in Macau.  Tr. 1-3 (Dkt. No. 14-1, Ex. 1).  The panel watched clips of and then

10   discussed an upcoming television documentary that focuses on the gambling industry in Macau.

11   Mot. Dismiss at 6.  The event, which was held on April 25, 2014 at the U.C. Berkeley Graduate

12   School of Journalism, was invitation only, and was attended by journalists, law enforcement, and

13   government officials.  *Id.*; Compl. ¶ 12.

14         After viewing a clip of the documentary, the moderator of the panel asked Chanos why he

15   was "shorting Macau in China," or placing short bets on the Macau gambling industry.  Tr. 5.

16   Chanos responded:

17           ". . . even I got a little nervous the deeper we dug into Macau and
        the more I got concerned that although I was long, the U.S. casino

18           operators, like Mr. Adelson and Mr. Wynn, I began to really get
        concerned about the risk I was taking with clients' money under

19           Foreign Corrupt Practices Act and a variety of other, you know,
        aspects of exactly how business is done there.  And, although, they

20           hide behind the facade of the junket companies, increasingly, from a
        -- if not across the legal line, to use my friend Bethany McLean's

21           term, it was "legal fraud."
            While they might be adhering to every aspect of legal

22           requirements in what they were doing, there was still an attempt to
        mislead and an attempt to obfuscate and I just couldn't get

23           comfortable with that."

24   Tr. 6.  Later on in the conversation, Chanos stated, "I mean, the fact of the matter is in the Foreign

25

26   [2] A "short bet" involves "[a] sale of a security that the seller does not own or has not contracted for
at the time of sale, and that the seller must borrow to make delivery."  SALE, *Black's Law
Dictionary* (9th ed. 2009), *available at* Westlaw BLACKS.  A seller usually makes a short bet
when he or she "expects the security's price to drop. If the price does drop, the seller can make a
profit on the difference between the price of the shares sold and the lower price of the shares
bought to pay back the borrowed shares."  *Id.*

27

28

1    Corrupt Practices Act, almost any major company doing business in China knows something

2    about the law; it's a pretty broad law.  Almost any company doing meaningful amounts of

3    business in China probably could be found in violation of FCPA."  *Id.* at 41.

4          Wynn argues that these statements constitute slander per se, and that they charge Wynn

5    with violating the FCPA.  As evidence of the falsity of that position, it points to the fact that the

6    U.S. Securities and Exchange Commission ("SEC") and the Nevada Gaming Control Board

7    ("NGCB") exonerated Wynn of all alleged FCPA allegations.  Oppo. Mot. Dismiss at 16 (Dkt.

8    No. 31).  According to Wynn, Chanos ignored this "readily available information" and published

9    his statements with reckless disregard as to their falsity.  Compl. ¶¶ 19-21.  Claiming that his

10   statements are not slanderous, Chanos moves to dismiss the Complaint.  Mot. Dismiss.

**LEGAL STANDARD**

11

12   **I.   MOTION TO DISMISS**

13         A motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6) shall be

14   granted where the plaintiff fails "to state a claim upon which relief can be granted."  FED. R. CIV.

15   P. 12(b)(6).  In reviewing these motions, courts view all of the pleaded facts as true and in the light

16   most favorable to the plaintiff.  *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).

17   "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops

18   short of the line between possibility and plausibility of entitlement to relief."  *Ashcroft v. Iqbal*,

19   556 U.S. 662, 678 (2009) (internal quotations and citations omitted).  The court is not obligated to

20   accept as true unreasonable inferences, conclusory statements, or allegations that "contradict

21   matters properly subject to judicial notice or by exhibit."  *In re Gilead Sciences. Sec. Litig.,* 536

22   F.3d 1049, 1055 (9th Cir. 2008).

23         In order to survive a motion to dismiss their defamation claim, the plaintiffs "must not only

24   establish that [the assertions] about which they complain are reasonably capable of sustaining a

25   defamatory meaning, they must also show that they are not mere comment within the ambit of the

26   First Amendment."  *Knievel v. ESPN*, 393 F.3d 1068, 1073-74 (9th Cir. 2005) (internal quotations

27   and citations omitted).

28

United States District Court
Northern District of California

## II.  SLANDER PER SE

Slander per se "is a false and unprivileged publication, orally uttered . . . which . . . [c]harges any person with crime, or with having been indicted, convicted, or punished for crime." CAL. CIV. CODE § 46(1).  A claim for slander per se requires a showing that the defendant made a factual assertion, as opposed to an opinion, that was false.  *Baker v. Los Angeles Herald Exam'r*, 42 Cal. 3d 254, 259-60 (1986).

The question of whether a statement constitutes an actionable factual assertion is a question of law for the court to decide.  *Franklin v. Dynamic Details, Inc.*, 116 Cal. App. 4th 375, 385 (2004).  However, if "the statement is susceptible of both an innocent and a libelous meaning," the question should be presented to the trier of fact.  *Id.*  Statements are more likely to be considered opinions when they contain "loose, figurative, or hyperbolic language which would negate the impression" that a speaker was seriously maintaining that a person committed a crime. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 21 (1990).

The Ninth Circuit "distinguishes between two kinds of opinion statements: those based on assumed or expressly stated facts, and those based on implied, undisclosed facts."  *Standing Comm. on Discipline of U.S. Dist. Court for Cent. Dist. of California v. Yagman*, 55 F.3d 1430, 1439 (9th Cir. 1995) (internal quotations and citations omitted).  Statements that give rise to an inference that there are undisclosed facts are actionable as factual assertions.  *Id.*  By contrast, opinions that are based on expressly stated or disclosed facts are actionable "only if the stated facts are themselves false and demeaning."  *Id.*  This is because "[w]hen the facts underlying a statement of opinion are disclosed, readers will understand they are getting the author's interpretation of the facts presented; they are therefore unlikely to construe the statement as insinuating the existence of additional, undisclosed facts."  *Id.*

California courts employ a "totality of the circumstances" test to determine whether an allegedly defamatory statement is actionable fact or nonactionable opinion.  *Baker*, 42 Cal. 3d at 260.  This involves consideration of several factors:

> . . . First, the language of the statement is examined.  For words to be defamatory, they must be understood in a defamatory sense. Where the language of the statement is cautiously phrased in terms of apparency,   the   statement   is   less   likely   to   be   reasonably

United States District Court
Northern District of California

United States District Court
Northern District of California

understood as a statement of fact rather than opinion.

Next, the context in which the statement was made must be considered . . . [and] the facts surrounding the publication must also be carefully considered.

This contextual analysis demands that the courts look at the nature and full content of the communication and to the knowledge and understanding of the audience to whom the publication was directed. [T]he publication in question must be considered in its entirety; [i]t may not be divided into segments and each portion treated as a separate unit.  It must be read as a whole in order to understand its import and the effect which it was calculated to have on the reader, and construed in the light of the whole scope and apparent object of the writer, considering not only the actual language used, but the sense and meaning which may have been fairly presumed to have been conveyed to those who read it.

*Id.* at 260-61 (internal quotations and citations omitted).  In addition, courts consider "whether the statement itself is sufficiently factual to be susceptible of being proved true or false."  *Underwager v. Channel 9 Australia*, 69 F.3d 361, 366 (9th Cir. 1995); *Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, No. CV 10–5696 CRB, 2013 WL 3460707, at *3 (N.D. Cal. July 9, 2013).

If a plaintiff is a public figure, the First Amendment additionally requires that he or she show by clear and convincing evidence that the defendant acted with actual malice.  *Underwager*, 69 F.3d at 365.  "The question whether the evidence in the record in a defamation case is sufficient to support a finding of actual malice is a question of law."  *Id.* (internal quotations and citations omitted).  In order to show malice, a plaintiff must demonstrate that the defendant "either knew his statement was false or subjectively entertained serious doubt his statement was truthful," *Christian Research Inst. v. Alnor*, 148 Cal. App. 4th 71, 84 (2007), or "with reckless disregard for [the] truth."  *Steam Press Holdings, Inc. v. Hawaii Teamsters, Allied Workers Union, Local 996*, 302 F.3d 998, 1003 (9th Cir. 2002).  The Supreme Court has clarified "that reckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing.  There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication."  *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968).

Finally, the California Civil Code protects statements made "[i]n a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the

5

1    motive for the communication to be innocent, or (3) who is requested by the person interested to

2    give the information."  CAL. CIV. CODE § 47(c).

3                                        **DISCUSSION**

4    **I.   REQUESTS FOR JUDICIAL NOTICE**

5          The parties have submitted multiple requests for judicial notice.  I will only address the

6    requests for judicial notice that I grant and upon which I rely in this Order, and DENY AS MOOT

7    all other requests.

8          In resolving a Rule 12(b)(6) motion, a district court ordinarily may not look beyond the

9    pleadings, and doing so will convert a motion to dismiss into a motion for summary judgment.

10   *Lee*, 250 F.3d at 688.  However, there are two exceptions to this general rule.  *Id.*  First, courts

11   may take judicial notice of materials that are submitted as part of the complaint, or materials of

12   undisputed authenticity and upon which the complaint necessarily relies.  *Id.*  Second, courts may

13   consider matters of public record or other matters subject to judicial notice under Federal Rule of

14   Evidence 201.  *See id.* at 688-89; FED. R. EVID. 201.

15         I take judicial notice of the video and corresponding transcript of the symposium during

16   which Chanos made the allegedly defamatory remarks.  This evidence, while not submitted as part

17   of the Complaint, is integral to Wynn's sole cause of action for slander per se.  Wynn also does

18   not contest the *authenticity* of either the transcript or the video.  Instead, Wynn objects to these

19   materials because they do not include the documentary clips that were viewed at the symposium.

20   stri at 7.  I have already ruled that the clips from the documentary are not relevant or necessary to

21   resolve the claim for slander per se.  Order at 1-2 (Dkt. No. 30).  Although Wynn argues that the

22   clips provide valuable context, *see* Oppo. Mot. Dismiss at 7, the contents of the clips do not

23   change the fact that Wynn's complaint fails as a matter of law on the grounds discussed below.

24         Next, SEC forms such as a Form 8-K or Form 10-K are matters of public record and may

25   be subject to judicial notice.  *See*, e.g., *Oklahoma Firefighters Pension & Ret. Sys. v. IXIA*, No.

26   CV-13–08440 MMM SHX, 2014 WL 4978568, at *13 (C.D. Cal. Oct. 6, 2014).  Accordingly, I

27   take judicial notice of Wynn's Form 8-K from 2013 (Dkt. No. 33-4), Wynn's Form 8-K from 2012

28   (Dkt. No. 14-4, Ex. 27), Wynn's Form 10-K from 2013 (Dkt. No. 14-1, Ex. 5), Wynn's Form 10-

United States District Court
Northern District of California

6

K from 2012 (Dkt. No. 14-2, Ex. 9), and Wynn's Form 10-K from 2011 (Dkt. No. 14-4, Ex. 26).  I

also take judicial notice of the U.S. Department of Justice's ("DOJ") Motion to Intervene in

another case involving Wynn Resorts, *Wynn Resorts, Ltd. v. Okada et al*.[3]  Dkt. No. 14-2, Ex. 12;

*see also Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (court

may take judicial notice of court filings in other cases).  I consider these documents not for the

truth of the statements they contain, but for the fact that they were filed and provided certain

information to the public.  I will not consider the declarations submitted by the parties.  *See*

*Villegas v. City of Gilroy*, 90 F. App'x 981, 982 (9th Cir. 2004).

## II.  THE COMPLAINT FAILS TO ADEQUATELY PLEAD SLANDER PER SE UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)

### A.  Wynn's statements were not slanderous

The Complaint alleges that "Chanos stated that Wynn and Wynn Resorts had violated the

Foreign Corrupt Practices Act."  Compl. ¶ 12.  Chanos made two assertions that relate to Wynn

and the FCPA: first, expressing concern "about the risk [he] was taking with clients' money"

under the FCPA, and second, that "[a]lmost any company doing meaningful amounts of business

in China probably could be found in violation of FCPA."  Tr. 6, 41.  In their briefs, the parties

primarily focus on the first of these assertions.

As a preliminary question, I consider whether Chanos actually made a slanderous

statement.  In order to state a claim for defamation, the plaintiff must provide evidence (i) "of a

statement of fact," (ii) "that is provably false."  *Seelig v. Infinity Broad. Corp.*, 97 Cal. App. 4th

798, 809 (2002).  Under California law, a defamatory statement of fact can be express or implied.

*Price v. Stossel*, 620 F.3d 992, 1003 (9th Cir. 2010).  To demonstrate that a defendant made an

implied statement of fact, the plaintiff must show that the statement is "reasonably . . . understood

as implying the alleged defamatory content."  *Id.* (internal quotation and citations omitted).

Chanos did not make any outright assertion that Wynn violated the FCPA.  From the plain

wording of what was spoken and for the reasons detailed below, neither is there is a reasonably

---

[3] I do not address the extensive requests for judicial notice of news articles and press releases, because the publicly filed documents above provide sufficient information to resolve the question of slander per se.

1    implied statement that Wynn violated the FCPA.

2           Chanos stated: "I got a little nervous the deeper we dug into Macau and the more I got

3    concerned that although I was long, the U.S. casino operators, like Mr. Adelson and Mr. Wynn, I

4    began to really get concerned about the risk I was taking with clients' money under Foreign

5    Corrupt Practices Act and a variety of other, you know, aspects of exactly how business is done

6    there." Tr. 6. Although Wynn argues that "[n]o inference is needed to understand that evidence of

7    FCPA violations triggered Chanos' decision to change his investment strategy," Oppo. Mot.

8    Dismiss at 13, I find the opposite to be true. It takes a significant inferential leap to conclude that

9    Chanos's general uncertainty about the questionable business methods in Macau equates to an

10   assertion that Wynn violated the FCPA.

11          In addition, Chanos's statement is not defamatory for the simple reason that it cannot be

12   false. As plaintiffs point out, a "critical question is whether there is a 'core of objective evidence'

13   that can be brought to bear to prove or disprove the challenged statement." Oppo. Mot. Dismiss at

14   14 (quoting *Milkovich*, 497 U.S. at 21). Here, even definitive proof that Wynn did not commit any

15   acts in violation of the FCPA would not would not alter the tenor of Chanos's statements or render

16   them false. It is possible for companies to comply entirely with the law and yet conduct business

17   in a way that poses an investment risk. In fact, Chanos's subsequent statements express this

18   sentiment. *See* Tr. 6 (discussing "legal fraud" and compliance with "every aspect of legal

19   requirements in what they were doing" but with "an attempt to mislead"); *see also Amaretto*, 2013

20   WL 3460707, at *5 (recognizing principle that "where the question of truth or falsity is a close

21   one, a court should err on the side of nonactionability.") (internal quotations and citations

22   omitted). Because there is no defamatory statement, Wynn's complaint fails to state a claim under

23   Federal Rule of Civil Procedure 12(b)(6).

24          **B.  Wynn's statements are opinions and not factual statements**

25          Wynn's complaint also fails because Chanos's statements at the conference are non-

26   actionable opinion. Once again, the key to this determination is whether a reasonable person

27   could construe any of Chanos's statements as a factual assertion that Wynn violated the FCPA.

28   *See Dodds v. Am. Broad. Co.*, 145 F.3d 1053, 1065 (9th Cir. 1998). This is a context-specific

8

1    inquiry that depends on the facts of each case and involves a three-part analysis.  *See Dreamstone*

2    *Entm't. Ltd. v. Maysalward Inc.*, No. 2:14–cv–02063–CAS, 2014 WL 4181026, at *5 (C.D. Cal.

3    Aug. 18, 2014) ("Courts must also give weight to cautionary terms used and consider all of the

4    circumstances surrounding the statement, including the medium by which the statement is

5    disseminated and the audience to which it is published.") (internal quotations and citations

6    omitted).

7          Looking first to the statements at issue, Chanos expressed the position that he was very

8    "concerned" after he "dug" deeper into "Macau," where Wynn and others operate casinos.  He did

9    not specify the basis for this concern, potentially giving rise to an inference of undisclosed facts,

10   including that the U.S. casino operators in Macau violated the FCPA.  *See Yagman*, 55 F.3d at

11   1439.  However, Chanos immediately qualified his statements about the FCPA with a contention

12   that corporations in Macau hide behind junket companies, engage in "legal fraud," and "adher[e]to

13   every aspect of legal requirements . . . [but with] an attempt to mislead."  Tr. 6.  These comments

14   would prevent a reasonable listener from interpreting Chanos's words as asserting that Wynn

15   actually violated the FCPA.

16         In addition, Chanos's comments appear to fall within the category of "loose" language

17   protected by *Milkovich*, or words "cautiously phrased in terms of apparency" described in *Baker*.

18   *Milkovich*, 497 U.S. at 21; *Baker*, 42 Cal. 3d at 260.  Chanos stated that he was "nervous,"

19   "concerned" and not "comfortable" with the casino operators' actions and that he did not want to

20   take the risk of investing in the gambling industry.  Tr. 6.  This language is vague enough that

21   while a listener may ultimately conclude Wynn and other casino operators violated the FCPA in

22   Macau, he or she could not find by clear and convincing evidence that Chanos intended to convey

23   that Wynn violated the FCPA.  *See Thomas v. Los Angeles Times Commc'ns, LLC*, 189 F. Supp.

24   2d 1005, 1013 (C.D. Cal.), *aff'd*, 45 F. App'x 801 (9th Cir. 2002) (while "[a] reasonable reader or

25   juror might conclude [plaintiff made false statement] . . . no reasonable juror could find that

26   Defendants intended to convey that impression"); *Dodds*, 145 F.3d at 1063-64 (a plaintiff "must

27   show that a jury could reasonably find by clear and convincing evidence that [the defendant]

28   *intended* to convey the defamatory impression") (emphasis added) (internal quotations and

United States District Court
Northern District of California

9

1    citations omitted).

2        Turning to the second *Baker* factor, the broad context and circumstances of the panel

3    discussion support a decision that Chanos's statements are opinions, and not factual assertions.

4    First, Chanos is a financial investor.  By profession, he makes calculations and speculates about

5    the performance of various businesses.  In response to the question of why he "short betted" in

6    Macau, Chanos expressed his concern about risks from potential FCPA violations.  Tr. 6.  A

7    reasonable listener would likely interpret Chanos's discussions of FCPA violations as a highly

8    educated guess dealing in probabilities, or as an explanation for his investment decisions.  *See,*

9    e.g., *Biospherics, Inc. v. Forbes, Inc.*, 151 F.3d 180 (4th Cir. 1998) (stock tip article instructing

10   readers to short bet stock because product was poor contained opinion only).

11       In addition, the bases for Chanos's opinions were not entirely undisclosed.  Chanos

12   discussed the "junket companies" that contributed to corporate deception in China as well as

13   money laundering that was destabilizing the industry.  *See Franklin*, 116 Cal. App. 4th at 380,

14   387-88 (statements that plaintiff "violated U.S. copyright laws" were opinions because they

15   purported to interpret law and were based upon disclosed facts).

16       Chanos's comments were also made in the context of an academic symposium.  Wynn

17   argues that this conference was "infused with academic rigor and ostensible journalistic integrity"

18   and that "the audience expected that it would hear true facts from the panel's experts."  Oppo.

19   Mot. Dismiss at 12.  But Wynn's assessment must be juxtaposed with the fact that "circumstances

20   in which an audience may anticipate efforts by the parties to persuade others to [sic] their positions

21   by use of epithets, fiery rhetoric, or hyperbole" weigh in favor of finding an assertion to be

22   opinion and not fact.  *Steam Press*, 302 F.3d at 1007 (internal quotations and citations omitted).

23   While Chanos was not speaking at a volatile public debate, he was a panel member of an academic

24   conference.  As in a debate, Chanos was invited to impart his opinion of and expertise in the

25   investment sector in Macau.  His contributions were intended to be cast in light of, and potentially

26   in contrast to, practitioners from other fields.  In this context, the audience was likely to

27   understand Chanos's comments as opinions rather than as factual assertions.  *See Partington v.*

28   *Bugliosi*, 56 F.3d 1147, 1154 (9th Cir. 1995) (stressing the need to provide "room for expressions

United States District Court
Northern District of California

10

of opinion by commentators, experts in a field, figures closely involved in a public controversy, or others whose perspectives might be of interest to the public").

Moreover, Chanos later stated that "[a]lmost any company doing meaningful amounts of business in China probably could be found in violation of FCPA." Tr. 41. This comment is clearly hyperbolic and cannot be considered to be defamatory. *See Milkovich*, 497 U.S. at 21. In fact, it provides further proof that Chanos's earlier statements were opinions, and not factual assertions. This language reflects an extremely cautious view of potential FCPA violations, making it less likely that the audience would conclude Chanos had uncovered actual evidence of FCPA violations by Wynn.

The third and final factor discussed by courts in making a determination of fact or opinion, whether Chanos's statements are capable of being proved true or false, was discussed above and provides support for the fact that Chanos's comments were opinion only. *See Underwager*, 69 F.3d at 366.

For all these reasons, I find that no reasonable listener could conclude that Chanos's comments amounted to an assertion that Wynn violated the FCPA. Wynn failed to meet its burden that the statements are not opinion protected by the First Amendment. *Knievel*, 393 F.3d at 1074.

### C.  Chanos did not act with malice

The parties do not dispute that Wynn is a public figure and that Wynn must therefore prove Chanos acted with actual malice. *See* Oppo. Mot. Dismiss at 17. Because Chanos's statements are not capable of being proved false, Chanos could not have acted with malice. Assuming, however, that Chanos made a factual assertion that Wynn violated the FCPA, Wynn must demonstrate that Chanos did so with knowledge of or serious subjective doubts as to its truth. *See Alnor*, 148 Cal. App. 4th at 84. Even construing the facts in the light most favorable to the plaintiffs, the complaint is deficient as to this element of Wynn's cause of action.

With respect to malice, the complaint alleges that "Chanos disregarded and purposefully avoided reliable, readily available information that neither Wynn nor Wynn Resorts had violated the Foreign Corrupt [P]ractices Act," that "Chanos had no reliable information whatsoever on

United States District Court
Northern District of California

1    which to base the false accusation that Wynn or Wynn Resorts had violated the Foreign Corrupt

2    Practices Act," and that "Chanos fabricated the Statement and published it with reckless disregard

3    for the truth."  Compl. ¶¶ 19-21.

4          Wynn argues that it has established prima facie evidence of malice because Wynn publicly

5    denied that it had committed FCPA violations, and because the SEC and other agencies found that

6    Wynn did not commit any violations.  Oppo. Mot. Dismiss at 16-18.  But this evidence does not

7    definitely prove that Chanos acted with malice, as the fact that the SEC ultimately did not find

8    Wynn in violation of the FCPA does not mean that Wynn committed no FCPA violations

9    whatsoever.  In addition, courts have found that general allegations that a defendant should have

10   known or should have investigated the truth of his or her statements do not adequately plead actual

11   malice.  *See Nicosia v. De Rooy*, 72 F. Supp. 2d 1093, 1109 (N.D. Cal. 1999) ("conclusory

12   statements that [a defamation defendant] should have known the truth does not satisfy the

13   heightened pleading standard" of actual malice); *Barger v. Playboy Enterprises, Inc.*, 564 F. Supp.

14   1151, 1156 (N.D. Cal. 1983) *aff'd*, 732 F.2d 163 (9th Cir. 1984).

15         Wynn does not provide any specific allegations that would support a finding that Chanos

16   harbored serious subjective doubts as to the validity of his assertions.  The complaint's allegation

17   that Chanos "published [the statements] with reckless disregard for the truth," Compl. ¶ 21, is

18   conclusory, as it merely recites an element of slander and does not present any potential

19   supporting facts.  This is insufficient to satisfy the "demanding burden" for pleading actual malice

20   in defamation actions.  *Z.F. ex rel M.A.F. v. Ripon Unified Sch. Dist. (RUSD)*, No. 2:10-CV-

21   00523, 2011 WL 356072, at *10 (E.D. Cal. Feb. 2, 2011) *aff'd sub nom. Z.F. v. Ripon Unified

22   Sch. Dist.*, 482 F. App'x 239 (9th Cir. 2012).  Moreover, the facts subject to judicial notice

23   directly contradict the other allegations in the complaint regarding Chanos's alleged fabrication

24   and disregard for reliable information.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988

25   (9th Cir. 2001) *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001) (In reviewing

26   12(b)(6) motion "[t]he court need not . . . accept as true allegations that contradict matters properly

27   subject to judicial notice").

28         First, both the SEC and the NGCB investigated Wynn for its activities in Macau, which is

United States District Court
Northern District of California

12

itself cause to question Wynn's compliance with the FCPA.  Dkt. No. 33-4.  These investigations

apparently related to a donation by Wynn to the University of Macau.  *Id.*   Second, Wynn's 2013

10-K provides explicit information about potential FCPA violations.  It states that:

> On February 18, 2012, the Board of Directors of Wynn Resorts received a report from Freeh, Sporkin & Sullivan, LLP *detailing numerous instances of conduct constituting prima facie violations of the Foreign Corrupt Practices Act (the "FCPA") by Kazuo Okada (formerly the largest beneficial owner of our shares)* and certain of his affiliates . . .  The Company has provided the Freeh Report to applicable regulators and has been cooperating with related investigations of such regulators.  The conduct of Mr. Okada and his affiliates and the outcome of any resulting regulatory findings could have adverse consequences to the Company.  *A finding by regulatory authorities that Mr. Okada violated the FCPA on Company property and/or otherwise involved the Company in criminal or civil violations could result in actions by regulatory authorities against the Company.*  Relatedly, regulators have and may pursue separate investigations into the Company's compliance with applicable laws in connection with the Okada matter . . . While the Company believes that it is in full compliance with all applicable laws, any such investigations could result in actions by regulators against the Company, which could negatively affect the Company's financial condition or results of operations.

Dkt. No. 14-1, Ex. 5 at 19 (emphases added).  Third, the DOJ commenced a criminal investigation

into the same events underlying the Okada affair, *see* Dkt. No. 14-2, Ex. 12, and Wynn does not

dispute that its onetime largest beneficial shareholder faced serious criminal charges under the

FCPA.

All of these government documents nullify Wynn's allegations that Chanos disregarded

publicly known information and that "Chanos had no reliable information whatsoever" on which

to base his statements.  Compl. ¶ 20.  Actions taken by the SEC and the DOJ are reliable, readily

available, and of interest to reasonable investors in the industry.  In the face of such evidence, it is

not possible to establish malice on the basis that a defendant ignored publicly known information.

Wynn failed to adequately plead actual malice under Rule 12(b)(6).

Wynn continues to assert that additional discovery would allow it to uncover evidence of

actual malice.  Oppo. Mot. Dismiss at 18.  However, there is no reasonable expectation that

discovery will prove any evidence that demonstrates subjective malice on Chanos's behalf.  As

Wynn itself contends, it must provide "enough fact[s] to raise a reasonable expectation that

United States District Court
Northern District of California

discovery will reveal evidence to prove [its] claim." Oppo. Mot. Dismiss at 15 (internal quotations and citations omitted). This was not done here, as Wynn's complaint relies solely on Chanos's presumed knowledge of "readily available information." Compl. ¶ 19. Because the complaint does not sufficiently allege defamation or malice, Chanos's motion to dismiss is GRANTED.[4]

## CONCLUSION

For the above reasons, I GRANT Chanos's Motion to Dismiss. Because of the liberal standard for granting leave to amend, the dismissal is without prejudice. *See*, e.g., *Verizon Del., Inc.*, 377 F.3d at 1091. If plaintiffs choose to amend their complaint, they must do so by January 13, 2015.

**IT IS SO ORDERED**.

Dated: December 16, 2014



WILLIAM H. ORRICK
United States District Judge

---

[4] Although I need not address the applicability of privilege under California law, Chanos's assertions are likely protected under California Civil Code § 47(c). There is insufficient evidence of malice, and it appears that all three subsections of Section 47(c) apply in this case. *See* CAL. CIV. CODE § 47(c).