ARNOLD & PORTER LLP
KENNETH G. HAUSMAN (No. 57252)
kenneth.hausman@aporter.com
DOUGLAS A. WINTHROP (No. 183532)
douglas.winthrop@aporter.com
JULIAN Y. WALDO (No. 277783)
julian.waldo@aporter.com
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
Telephone:     415.471.3100
Facsimile:     415.471.3400

BOSTWICK LAW
GARY L. BOSTWICK (No. 79000)
gbostwick@B1law.com
12400 Wilshire Blvd., Suite 400
Los Angeles, CA 90025
Telephone:     310.979.6059
Facsimile:     424.228.5975

Attorneys for Defendant
JAMES CHANOS

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| STEPHEN WYNN and WYNN RESORTS LIMITED,<br><br>                    Plaintiffs,<br><br>          v.<br><br>JAMES CHANOS,<br><br>                    Defendant. | Case No.: CV 14-4329 WHO<br><br>**MEMORANDUM IN SUPPORT OF DEFENDANT JAMES CHANOS'S REQUEST FOR ATTORNEYS' FEES AND COSTS**<br><br>Hon. William H. Orrick |

1

**TABLE OF CONTENTS**

2

**Page**

3    I.    INTRODUCTION    1

4    II.    FACTUAL BACKGROUND    1

5        A.    After Plaintiffs File The Complaint, Mr. Chanos Retains Arnold & Porter And Mr. Bostwick.    1

6

7        B.    Mr. Chanos's Attorneys Conduct Preliminary Fact Investigation And Legal Analysis.    2

8        C.    Mr. Chanos Files The First Anti-SLAPP Motion And First Motion to Dismiss.    3

9

10        D.    Plaintiffs File A Motion For Discovery, Which Mr. Chanos Successfully Opposes.    4

11        E.    Plaintiffs Oppose The First Motions, And Mr. Chanos Files Replies In Support.    5

12

13        F.    The Court Hears Argument On The First Motions.    5

       G.    Plaintiffs File A First Amended Complaint, And Mr. Chanos Files A Second Set Of Motions In Response.    6

14

15        H.    The Court's March 3, 2015, Order Grants Mr. Chanos's Second Set Of Motions.    6

16

17    III.    ARGUMENT    7

       A.    Mr. Chanos Is Entitled To All The Fees He Incurred On The Various Aspects Of The Case.    7

18

19        B.    The Amount Of Attorneys' Fees Mr. Chanos Is Seeking Is Reasonable.    8

20              1.    The Hourly Rates Charged By Arnold & Porter And Mr. Bostwick Are Reasonable.    9

21

22              2.    The Amount Of Time Spent By The Lawyers Was Reasonable.    11

23              3.    The Overall Amount Of The Attorneys Fees Sought Is Reasonable.    13

   IV.    CONCLUSION    14

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*Banas v. Volcano Corp.*, — F. Supp. 3d —, No. 12-CV-01535-WHO,
   2014 WL 7051682 (N.D. Cal. Dec. 12, 2014) ............................................................. 10

5

6

*Church of Scientology v. Wollersheim*,
   42 Cal. App. 4th 628 (1996), *disapproved on other grounds by*
   *Equilon Enters. v. Consumer Cause, Inc.*, 29 Cal. 4th 53 (2002) ............................ 8, 11

7

8

*Graham-Sult v. Clainos*,
   756 F.3d 724 (9th Cir. 2013) ...................................................................................... 7, 8

9

*In Re HPL Techs., Inc. Sec. Litig.*,
   366 F. Supp. 2d 912 (N.D. Cal. 2005) ........................................................................ 12

10

11

*Kearney v. Foley & Lardner*,
   553 F. Supp. 2d 1178 (S.D. Cal. 2008) ........................................................................ 7

12

*Kershaw v. Maryland Cas. Co.*,
   172 Cal. App. 2d 248 (1959) ....................................................................................... 11

13

14

*Ketchum v. Moses*,
   24 Cal. 4th 1122 (2001) ............................................................................................. 7, 11

15

*Kilopass Tech., Inc. v. Sidense Corp.*,
   — F. Supp. 3d —, No. 10-CV-02066-SI, 2015 WL 1065883
   (N.D. Cal. Mar. 11, 2015) ............................................................................................ 9

16

17

*Manufactured Home Cmtys. v. Cnty. of San Diego*,
   655 F.3d 1171 (9th Cir. 2011) ....................................................................................... 7

18

19

*Premier Med. Mgmt. Sys., Inc. v. California Ins. Guar. Ass'n*,
   163 Cal. App. 4th 550 (2008) .................................................................................... 7, 8

20

*Schwarz v. Folloder*,
   767 F.2d 125 (5th Cir. 1985) ...................................................................................... 14

21

22

*Smith v. Santa Rosa Press Democrat*,
   No. C 11-02411 SI, 2011 WL 7777108 (N.D. Cal. Dec. 19, 2011) .............................. 7

23

**Statutes and Rules**

24

Cal. Code Civ. Proc.
   §425.16 ......................................................................................................................... 2
   §425.16(c) ..................................................................................................................... 1
   §425.16(c)(1) ................................................................................................................ 8
   §425.16(e) ..................................................................................................................... 7

25

26

27

Civ. Loc. Rule 54-5(b)(1) ............................................................................................... 1

28

## I. INTRODUCTION

Plaintiffs Stephen Wynn and Wynn Resorts Limited ("Plaintiffs") filed a complaint for slander *per se* against Defendant James Chanos. Mr. Chanos filed a motion to strike the complaint as a strategic lawsuit against public participation under California law (the "First Anti-SLAPP Motion") together with a motion to dismiss (the "First Motion to Dismiss"). Plaintiffs then filed a motion to conduct discovery, which the Court denied. After the Court dismissed the original Complaint, Plaintiffs filed a First Amended Complaint, which did not cure the deficiencies in the original Complaint. This necessitated another motion to strike (the "Second Anti-SLAPP Motion") and motion to dismiss (the "Second Motion to Dismiss"), and Plaintiffs filed another motion for discovery. The Court granted both of Mr. Chanos's second motions and denied the second motion for discovery. This memorandum follows the Court's order that Mr. Chanos submit evidence of the amount of his attorneys' fees and costs. Cal. Code Civ. Proc. §425.16(c).[1]

## II. FACTUAL BACKGROUND

### A. After Plaintiffs File The Complaint, Mr. Chanos Retains Arnold & Porter And Mr. Bostwick.

Plaintiffs filed their Complaint on September 25, 2014, and it immediately received considerable publicity. *See* Declaration of Kenneth G. Hausman ("Hausman Decl.") ¶6. Mr. Chanos engaged Arnold & Porter LLP to represent him. Kenneth G. Hausman, a litigator with extensive experience representing individuals and companies involved in the finance industry like Mr. Chanos and his investment firm, took the lead on the case. *Id.* ¶¶2, 4-5. In addition, in light of the seriousness of the allegations and the publicity the action had generated (with potential reputational consequences), Mr. Chanos also retained Gary L. Bostwick of Bostwick Law. Declaration of Gary L. Bostwick. ("Bostwick Decl.") ¶4. Mr. Bostwick specializes in First Amendment law. *Id.* ¶2.

---

[1]As required by Civil Local Rule 54-5(b)(1), counsel for Mr. Chanos spoke with Plaintiffs' counsel on March 17, 2015, in an attempt to resolve any disputes with respect to this request. Hausman Decl. ¶14. Counsel for Mr. Chanos presented Plaintiffs' counsel with a summary of the fees requested, in substantially similar form to Exhibit A. On March 20, Plaintiffs' counsel told Mr. Chanos's counsel that he had reviewed the summary but needed more time to analyze it and confer with his client. *Id.* Counsel for Plaintiffs and Mr. Chanos are continuing to meet and confer to try to resolve any dispute about this application. *Id.*

Immediately upon being retained, Arnold & Porter and Mr. Bostwick coordinated their efforts to avoid any duplication or inefficiency in working together in defending the case. Hausman Decl. ¶4; Bostwick Decl. ¶4. The attorneys undertook a division of labor to maximize cost efficiency. Arnold & Porter took primary responsibility for investigation, research, and preparation of court filings. Hausman Decl. ¶5. Mr. Bostwick provided input on case strategy, suggested cases and avenues for research concerning defamation in order to reduce the amount of research required, and provided a final review and edit of court briefs that Arnold & Porter had drafted. Bostwick Decl. ¶4. Within Arnold & Porter, Mr. Hausman was responsible for the overall handling of the defense, partner Douglas A. Winthrop consulted with Mr. Hausman on strategy and was responsible for the first level of editing of briefs and declarations, and associates Julian Y. Waldo and Marco Martemucci handled the initial factual investigation and legal research and drafted filings. Hausman Decl. ¶5; Declaration of Douglas A. Winthrop ("Winthrop Decl.") ¶4; Declaration of Julian Y. Waldo ("Waldo Decl.") ¶3; Declaration of Marco Martemucci ("Martemucci Decl.") ¶3.

### B.     Mr. Chanos's Attorneys Conduct Preliminary Fact Investigation And Legal Analysis.

After reviewing Plaintiffs' Complaint, Arnold & Porter and Mr. Bostwick concluded that Plaintiffs' allegations arose out of protected activities and thus were potentially subject to California's anti-SLAPP statute. Hausman Decl. ¶6; Bostwick Decl. ¶5. Arnold & Porter undertook preliminary research and analysis of the factual and legal issues raised by the Complaint, including the law regarding anti-SLAPP motions, and case law and statutory authority pertaining to the Complaint's claim for slander *per se*. Waldo Decl. ¶¶3, 10-15.

More specifically, the successful anti-SLAPP motions in this case required counsel to research both the state law governing special motions to strike under California Code of Civil Procedure 425.16, and how that state law applied in federal court. *Id.* ¶10. With respect to the first prong of the anti-SLAPP statute requiring that the moving party establish that the claim (1) alleged protected activities and (2) arose from those protected activities, Arnold & Porter needed to research the facts and circumstances surrounding the panel discussion at the symposium at the University of California, Berkeley's Graduate School of Journalism. *Id.* ¶13. Counsel also had to research cases

dictating how anti-SLAPP motions are harmonized with the Federal Rules of Civil Procedure. *Id.* ¶10.  Based on this research, counsel determined that they would also need to prepare a motion to dismiss the Complaint.  Hausman Decl. ¶6.

With respect to the second anti-SLAPP prong, concerning whether Plaintiffs could establish a probability of prevailing on their claims of slander *per se*, Arnold & Porter researched, with the benefit of Mr. Bostwick's expertise, the law surrounding determinations of express and implied defamatory meaning, mixed statements of opinion and fact, constitutional malice (including the standards for the speaker's state of mind) and privilege.  Waldo Decl. ¶11.  To determine how to approach the element of malice, Arnold & Porter researched Mr. Wynn and Wynn Resorts to determine whether they qualified as public figures.  *Id.* ¶14.  Arnold & Porter also engaged in research to determine whether Mr. Chanos's statement of investment risk, if taken as a factual statement, could be proven false.  *Id.* ¶15.

Arnold & Porter also researched the contours of California's common interest privilege, including the definition of actual malice under state law, as opposed to constitutional malice, and the factors that establish whether an audience is "interested" within the meaning of the statute.  *Id.* ¶12.  Determining whether the common interest privilege applied required further factual research into the circumstances of the symposium.  *Id.* ¶15.

### C.    Mr. Chanos Files The First Anti-SLAPP Motion And First Motion to Dismiss.

After the initial assessment and investigation of Plaintiffs' Complaint and researching the applicable law governing anti-SLAPP motions and the law and facts surrounding Plaintiffs' slander claim, Arnold & Porter prepared an initial draft of the First Anti-SLAPP Motion.  Waldo Decl. ¶16. In support of the motion, Arnold & Porter prepared a Memorandum of Points and Authorities, declarations by Mr. Chanos and Mr. Hausman, a substantial Request for Judicial Notice of Documents, and a Proposed Order.  ECF Nos. 11 through 15.  The request for judicial notice and the declarations provided the factual context surrounding and supporting the First Anti-SLAPP Motion.  Once the First Anti-SLAPP Motion was substantially complete, Arnold & Porter used it to create the First Motion to Dismiss the Complaint, which made essentially the same arguments but in a different procedural vehicle.  Martemucci Decl. ¶4.  Mr. Martemucci, who had provided some

research and analysis for the First Anti-SLAPP Motion, took responsibility for converting the anti-SLAPP arguments into the First Motion to Dismiss. *Id.* Arnold & Porter's paralegals checked the case and factual citations for accuracy. Waldo Decl. ¶17.

After Arnold & Porter prepared comprehensive working drafts of the motions and supporting documents, it transmitted the drafts to Mr. Bostwick, who provided comments. *Id.* ¶18. After incorporating Mr. Bostwick's revisions and addressing his comments, Arnold & Porter's attorneys and paralegals gave the documents a final review and prepared them for filing. *Id.*

### D. Plaintiffs File A Motion For Discovery, Which Mr. Chanos Successfully Opposes.

After receiving Mr. Chanos's First Anti-SLAPP Motion and First Motion to Dismiss, Plaintiffs' counsel contacted counsel for Mr. Chanos to discuss Plaintiffs' alleged need for discovery to oppose the First Anti-SLAPP Motion. Hausman Decl. ¶7. After Arnold & Porter failed to convince Plaintiffs in several emails and phone calls that no discovery was necessary or allowed, the parties agreed to an extended briefing schedule on the First Anti-SLAPP Motion and First Motion to Dismiss, and a compressed briefing schedule on a motion that Plaintiffs would file to request discovery before the Court ruled on Mr. Chanos's motions. *Id.*

Plaintiffs then filed an eighteen-page motion for discovery, together with four declarations, including a declaration by a purported expert linguist opining on the meaning of Mr. Chanos's statements, a request for judicial notice, and a proposed order. ECF Nos. 21 through 21-12. After receiving and reviewing Plaintiffs' motion and supporting documents, Arnold & Porter and Mr. Bostwick followed their established practice, whereby Mr. Bostwick provided early assistance and direction with the legal research, Arnold & Porter conducted the bulk of the research and prepared the draft opposition papers, Mr. Bostwick provided comments, and Arnold & Porter's paralegals checked the accuracy of the papers' citations and finalized them for filing. Waldo Decl. ¶19. Arnold & Porter also coordinated the preparation of a declaration by Mr. Chanos that responded to certain points raised in Plaintiffs' declarations. Hausman Decl. ¶8.

**E.    Plaintiffs Oppose The First Motions, And Mr. Chanos Files Replies In Support.**

When counsel for Mr. Chanos received the linguistics expert's declaration in support of Plaintiffs' motion for discovery, they correctly anticipated that Plaintiffs would submit the same declaration in support of their opposition to the First Anti-SLAPP Motion.   Hausman Decl. ¶9. Accordingly, Arnold & Porter began exploring potential experts to provide a declaration rebutting the conclusions reached by Plaintiffs' expert.   Waldo Decl. ¶20.   After receiving Plaintiffs' twenty-five page opposition and expert linguist's declaration supporting it, Arnold & Porter proceeded to coordinate with the expert they had identified, Professor John A. Hawkins, to prepare a rebuttal declaration to support Mr. Chanos's reply.   *Id.*   Arnold & Porter only hired Mr. Hawkins because Plaintiffs had submitted an expert declaration.   Hausman Decl. ¶9.

The work on the reply briefs followed the same pattern established for the motion papers, with Arnold & Porter performing the bulk of the research and drafting, and Mr. Bostwick providing direction in advance and comments at the conclusion.   Once again, Mr. Waldo took the lead on the reply for the First Anti-SLAPP Motion and Mr. Martemucci crafted the reply for the First Motion to Dismiss based in part on that work.   Waldo Decl. ¶21; Martemucci Decl. ¶5.   Once the briefs were in substantially final form with editing by Mr. Winthrop and Mr. Hausman, Mr. Bostwick provided comments and suggested revisions, the Arnold & Porter attorneys edited further and the paralegals checked their citations and prepared them for filing.   Waldo Decl. ¶21.

**F.    The Court Hears Argument On The First Motions.**

After Mr. Chanos filed his reply briefs, Plaintiffs filed an addendum to their request for judicial notice and objections to Professor Hawkins' declaration and the request for judicial notice submitted in support of the reply briefs Mr. Chanos had filed.   Counsel for Mr. Chanos reviewed and analyzed these filings, but determined no response was necessary.   Hausman Decl. ¶10. Counsel for Mr. Chanos focused instead on preparing for the hearing, with Mr. Hausman re-reading the authorities cited in the briefs, the exhibits to the requests for judicial notice, and other filings, and strategizing with Mr. Waldo and Mr. Bostwick.   *Id.*

**G.** **Plaintiffs File A First Amended Complaint, And Mr. Chanos Files A Second Set Of Motions In Response.**

After the Court issued its order granting Mr. Chanos's First Motion to Dismiss, counsel for the parties discussed how Plaintiffs intended to proceed.  Hausman Decl. ¶11.  As it became clear that Plaintiffs intended to file an amended complaint, the parties conferred regarding a continuance of the impending case management conference until a date after the Court could rule on the motions Mr. Chanos's counsel anticipated filing in opposition to the amended complaint.  Waldo Decl. ¶22.

Upon receiving the First Amended Complaint, counsel for Mr. Chanos reviewed it in light of the Court's prior order and decided to file the Second Anti-SLAPP Motion and Second Motion to Dismiss.  Hausman Decl. ¶11.  Given the close similarity between the First Amended Complaint and the original Complaint, only modest additional research was required, and the process for preparing the motions proceeded much more quickly.  Waldo Decl. ¶23.  Because the Second Anti-SLAPP Motion and the Second Motion to Dismiss were even more similar than the first set of motions, Mr. Waldo handled both of the second motions and spent little time converting the Second Anti-SLAPP Motion into the Second Motion to Dismiss.  *Id.*

Plaintiffs filed oppositions to the second motions, but these, too, were similar to the oppositions in the earlier round of briefing.  Consequently, Mr. Chanos's counsel prepared the replies with less time and effort than before and devoted less time to the Second Motion to Dismiss separate from the Second Anti-SLAPP Motion.  *Id.*; *see also* Waldo Decl. Ex. A.  The amount of time spent preparing for the second hearing was likewise less than for the first hearing.  Hausman Decl. ¶11; *see also* Waldo Decl. Ex. A.

**H.** **The Court's March 3, 2015, Order Grants Mr. Chanos's Second Set Of Motions.**

The Court held a hearing on the second motions on February 25, 2015.  On March 3, 2015, the Court granted Mr. Chanos's Second Motion to Dismiss, holding that nothing in the First Amended Complaint justified a different conclusion from the Court's prior order.  ECF No. 64.  The Court also held that California's anti-SLAPP statute applied to the First Amended Complaint, and that Plaintiffs did not have a likelihood of prevailing in light of the Court's ruling on the Second

1   Motion to Dismiss. *Id.* Accordingly, the Court granted Mr. Chanos's Second Anti-SLAPP Motion.

2   The Court directed Mr. Chanos to "submit papers establishing attorney's fees and costs pursuant to

3   California Code of Civil Procedure § 425.16(e)."

4   **III.   ARGUMENT**

5         **A.    Mr. Chanos Is Entitled To All The Fees He Incurred On The Various Aspects**
6                **Of The Case.**

7         As the Court's March 3, 2015, Order implicitly recognized, an "award of attorneys fees and

8   costs to a defendant who successfully moves to strike under the California anti-SLAPP statute is

9   mandatory." *Smith v. Santa Rosa Press Democrat*, No. C 11-02411 SI, 2011 WL 7777108, at *1

10  (N.D. Cal. Dec. 19, 2011) (citing *Ketchum v. Moses*, 24 Cal. 4th 1122, 1131 (2001)).  The only

11  issue for the Court to decide is whether Mr. Chanos's fee application is reasonable.  As

12  demonstrated below, the amount of fees Mr. Chanos requests is reasonable.

13        A prevailing defendant may recover all of the fees incurred in responding to a baseless

14  action, which can include both the work specifically on an anti-SLAPP motion as well as other

15  work on the case, such as preparing a motion to dismiss, investigating the case, and preparing other

16  filings. *Graham-Sult v. Clainos*, 756 F.3d 724, 752 (9th Cir. 2013) (rejecting argument that fees

17  should not be awarded for "motion to dismiss, reply, other filings, document review, and preparing

18  initial disclosures" because "Defendants incurred the expenses Plaintiffs dispute in responding to a

19  lawsuit the district court found to be baseless"); *Kearney v. Foley & Lardner*, 553 F. Supp. 2d 1178,

20  1183-84 (S.D. Cal. 2008) (awarding fees both for an anti-SLAPP motion directed at state law

21  claims and for a motion to dismiss directed at federal claims, where factual and legal bases of

22  motions were "inextricably intertwined").  Fees can be properly awarded to multiple sets of counsel

23  in a joint defense effort, and can also include the fees incurred in preparing a fee application.

24  *Graham-Sult*, 756 F.3d at 752-53 (affirming award of fees to joint defense effort); *Premier Med.*,

25  163 Cal. App. 4th at 556 (same); *Ketchum*, 24 Cal. 4th at 1133 (fee award reasonably includes fees

26  spent on fee request).  Where, as here, a defendant files two anti-SLAPP motions, it is proper to

27  award fees for work on both of them, even though only the second motion terminates the action.

28  *See Manufactured Home Cmtys. v. Cnty. of San Diego*, 655 F.3d 1171, 1181 (9th Cir. 2011)

(affirming award of fees on first anti-SLAPP motion that was granted but overturned on appeal, as well as second anti-SLAPP motion that was granted and affirmed).  Additionally, "'each fee application under the anti-SLAPP statute must be assessed on its own merits[,] taking into account what is reasonable under the circumstances.'"  *Graham-Sult*, 756 F.3d at 752 (quoting *Premier Med. Mgmt. Sys., Inc. v. California Ins. Guar. Ass'n*, 163 Cal. App. 4th 550, 561 (2008)) (alteration and ellipsis omitted).  Accordingly, a fee award can be reasonable even though it is higher or lower than an award in another case.  *Id.* (citing *Premier Med.*, 163 Cal. App. 4th at 561).

To determine the reasonableness of an anti-SLAPP fees request, courts consider "the nature of the litigation, its difficulty, the amount involved, the skill required and the skill employed in handling the litigation, the attention given, the success of the attorney's efforts, his learning, his age, and his experience in the particular type of work demanded; the intricacies and importance of the litigation, the labor and necessity for skilled legal training and ability in trying the cause, and the time consumed."  *Church of Scientology v. Wollersheim*, 42 Cal. App. 4th 628, 658-59 (1996), *disapproved on other grounds by Equilon Enters. v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 68 n.5 (2002) (citations, internal quotation marks and ellipsis omitted).

### B.    The Amount Of Attorneys' Fees Mr. Chanos Is Seeking Is Reasonable.

From the filing of the Complaint until the second hearing on February 25, 2015, Mr. Chanos incurred $538,043.00 in attorneys' fees and $52,656.23 in costs in connection with defending Plaintiffs' suit, for a total of $590,699.23.[2]  Waldo Decl. ¶8 & Ex. A.  Mr. Chanos has already excluded from this total more than $150,000 in fees and costs for services by Arnold & Porter's staff and several attorneys who assisted with the matter.  Mr. Chanos has also excluded more than $15,000 he incurred in connection with a motion that he never filed, and he has not sought to collect the approximately $25,000 he has incurred in preparing this fees application.  In total, eliminating these items reduced the fees by more than $190,000.  Waldo Decl. ¶¶8, 24.[3]

---

[2] Because costs are awarded under the anti-SLAPP statute, Mr. Chanos has not separately submitted a bill of costs.  *See* Cal. Code Civ. Proc. §425.16(c)(1) (subject to exceptions not applicable here, "a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees *and costs*") (emphasis added).

[3] In the event the Court determines that fees incurred in connection with the motion to dismiss are not recoverable, Mr. Chanos has calculated the fees devoted exclusively to the First Motion to Dismiss as $60,863.50 and the fees exclusively for the reply on the Second Motion to Dismiss as

As explained in more detail below, the hourly rates charged by the attorneys are reasonable, the amount of time the attorneys spent was reasonable, and the overall amount of the fees is reasonable.

### 1. The Hourly Rates Charged By Arnold & Porter And Mr. Bostwick Are Reasonable.

Mr. Chanos had written fee agreements with Arnold & Porter and Mr. Bostwick, both of which provided that the firms would bill Mr. Chanos on an hourly rate basis. The fees charged under the agreement with Arnold & Porter were billed at Arnold & Porter's standard hourly rates for clients, like Mr. Chanos, in New York. Hausman Decl. ¶3. Mr. Bostwick billed his time at his standard hourly rate. Bostwick Decl. ¶3. Mr. Chanos's agreements to pay Arnold & Porter's and Mr. Bostwick's hourly rates are themselves evidence that those rates are market rates. *See Kilopass Tech., Inc. v. Sidense Corp.*, — F. Supp. 3d —, No. 10-CV-02066-SI, 2015 WL 1065883, at *8 (N.D. Cal. Mar. 11, 2015) ("attorney-client fee arrangement can often provide valuable indication of the prevailing reasonable rate in the community" and "negotiation and payment of fees by sophisticated clients are solid evidence of their reasonableness in the market").

Both Arnold & Porter's and Mr. Bostwick's rates are within the market range of fees charged in the San Francisco area. Hausman Decl. ¶3; Bostwick Decl. ¶3; Declaration of Chuck Chandler ("Chandler Declaration") ¶11 & Ex. B. Mr. Chandler, a partner at Valeo Partners, has concluded, based on his analysis of Valeo's database of rates actually billed to clients (as reflected in online-accessible court filings), that Arnold & Porter's and Mr. Bostwick's rates are comparable to the average market rates for attorneys in Northern California. Chandler Decl. ¶8 & Ex. B. The rates for Mr. Hausman, Mr. Winthrop and Mr. Bostwick ranged from $750 to $1085, which are between 5% and 29% *below* the average rate for attorneys of similar experience in Northern California. *Id.* Ex. B. The rates for the associates at Arnold Porter that worked on this matter ranged from $570 to $710, and are comparable to the rates of associates in the region with similar

---

$1372.00, for a total of $62,235.50. *See* Waldo Decl. Ex. A. The data in Arnold & Porter's timekeeping system does not allow for a clear segregation of the remainder of the fees related to the motions to dismiss because that work overlapped with work on the anti-SLAPP motions. Waldo Decl. ¶8.

experience.[4]  *Id.*  The rates for Arnold Porter's paralegals ranged from $300 to $340, are within the range of $240-$413 for paralegals in Northern California and are *below* the market average rate across 2014 and 2015 of $339.  *Id.*

This is in accord with this Court's recent determination of the range of reasonable rates in the Northern District of California, which was based in part on a declaration by Mr. Chandler.  In *Banas v. Volcano Corp.,* the Court found that attorneys' rates between $355 and $1095 per hour were within the prevailing market rates for partners and associates in the Northern District of California.  — F. Supp. 3d —, No. 12-CV-01535-WHO, 2014 WL 7051682, at *5 (N.D. Cal. Dec. 12, 2014).  Rates for the attorneys at Arnold & Porter and Mr. Bostwick fall within this range as well.  *See* Waldo Decl. Ex. A.

These hourly rates are also amply justified by the skill and experience of Mr. Chanos's attorneys.  Mr. Hausman has practiced law for more than forty years, and has been recognized by *The Best Lawyers in America* in commercial, banking and finance, securities, and securities regulation litigation for the last several years.  Hausman Decl. ¶2.  He has been recognized as a *Northern California Super Lawyer* for the last ten years, and as one of the *Top 100 Lawyers in California*.  Mr. Winthrop, who previously served as a clerk to Justice John Paul Stevens on the Supreme Court, has more than twenty years of experience in business and intellectual property litigation and has been recognized as a *Northern California Super Lawyer* for the last ten years.  Winthrop Decl. ¶2.  Mr. Martemucci has approximately six years of experience litigating in state and federal court, including significant experience with defamation actions, and is admitted to both the New York and California bars.  Martemucci Decl. ¶2.  Mr. Waldo has four years of experience with litigating a wide variety commercial disputes, including defamation actions.  Waldo Decl. ¶2.  Before joining Howard, Rice, Nemerovski, Canady Falk & Rabkin (which subsequently combined with Arnold & Porter), Mr. Waldo clerked for United States District Court Judge Kathleen Cardone.  *Id.*  Mr. Bostwick has more than thirty-five years of experience, primarily with First Amendment

_____

[4] Mr. Waldo's rates in 2014 and 2015 were 3% and 6% below average, respectively.  Chandler Decl. Ex. B.  In 2014, Mr. Martemucci's rate was 1% over the market average, though his rate for 2015 was 3% under the market average.  *Id.*  Even the 2014 rate, however, is still within the range of reasonable rates in the market.  *See Banas v. Volcano Corp.*, 2014 WL 7051682, at *5 (finding rates reasonable even where they are on the high end of the market range).

law.  Bostwick Decl. ¶2.  He is a fellow of the American College of Trial Lawyers, and *Chambers USA* and *The Legal 500 US* recognized him as one of California's leading media and entertainment lawyers.  *Id*.  He has been rated as a Super Lawyer for the past twelve years, and has been listed as one of *The Best Lawyers in America* and the *Lawyer of the Year, 2012* in the First Amendment field in Southern California.[5]  *Id.*

## 2.    The Amount Of Time Spent By The Lawyers Was Reasonable.

Plaintiffs' factually and legally unsubstantiated claims required Mr. Chanos not only to defend himself from potentially significant financial liability but, just as importantly, preserve his reputation for integrity that Plaintiffs' lawsuit threatened.  Mr. Chanos's counsel's declarations establishing the time expended in defending him and the amounts claimed, which Mr. Chanos paid, are a *prima facie* case or lodestar of reasonable fees for that defense.  *Ketchum*, 24 Cal. 4th at 1140-41; *Wollersheim*, 42 Cal. App. 4th at 658-59; *Kershaw v. Maryland Cas. Co.*, 172 Cal. App. 2d 248 (1959) ("When it does not appear that the attorneys' fees and other expenses are obviously excessive, testimony of the amounts paid will constitute a *prima facie* case; and it will be assumed in such case that the attorneys' fees so paid were reasonable, unless the contrary appears").

Counsel for Mr. Chanos has prepared a summary of the fees incurred on various aspects of the litigation.  Waldo Decl. Ex. A.  That summary divides the work that Mr. Chanos's attorneys performed into the following categories: (1) Initial Investigation/Preparing First Anti-SLAPP Motion, (2) Preparing First Motion to Dismiss, (3) Discovery Motion, (4) Preparing Reply Brief on First Anti-SLAPP Motion, (5) Preparing Reply Brief on First Motion to Dismiss, (6) Preparation and Attendance at Hearing On First Anti-SLAPP Motion and Motion to Dismiss, (7) Preparing Second Anti-SLAPP Motion and Second Motion to Dismiss, (8) Preparing Reply Brief on Second Anti-SLAPP Motion and Second Motion to Dismiss, and (9) Preparation and Attendance at Hearing on Second Anti-SLAPP and Second Motion to Dismiss.  Vaughn Walker, former Chief Judge of the United States District Court for the Northern District of California, praised such categorization as "an especially helpful compromise between reporting hours in the aggregate (which is easy to

---

[5] More information about the experience and qualifications of the defense attorneys is provided in the accompanying declarations.  *See* Bostwick Decl. ¶2; Hausman Decl. ¶2; Winthrop Decl. ¶2;Waldo Decl. ¶2; Martemucci Decl. ¶2.

review, but lacks informative detail) and generating a complete line-by-line billing report (which offers great detail, but tends to obscure the forest for the trees)." *In Re HPL Techs., Inc. Sec. Litig.*, 366 F. Supp. 2d 912, 920 (N.D. Cal. 2005).

As previously noted (*see* Section II(B), *supra*) and as reflected in the summary of bills for Mr. Chanos's counsel (*see* Waldo Decl. Ex. A), preparing the anti-SLAPP motions required detailed legal research of the procedural aspects of anti-SLAPP motions in federal court, the substantive requirements of anti-SLAPP motions, and the defenses to slander claims. It also required factual research into the circumstances alleged in the complaints as well as the background of Mr. Wynn and Wynn Resorts, to determine how the constitutional requirements for defamation actions applied here. Plaintiffs' oppositions underscore the complexity of the case and the legal issues. Those oppositions included extensive legal briefs citing scores of cases and multiple declarations, requests for judicial notice, and exhibits. Plaintiffs' requests for discovery required additional legal research and analysis, and exacerbated the difficulty of the work by adding more issues and briefing on top of what was required based on Mr. Chanos's motions. Plaintiffs' resort to a linguistics expert to opine on the issue of defamatory meaning also forced Mr. Chanos to secure his own expert as a precautionary measure, and further complicated the briefing.

Recognizing the need to handle the matter efficiently and economically and to prevent unnecessary overlap, Arnold & Porter and Mr. Bostwick coordinated at each stage of the matter to expedite the work and avoid duplication. Hausman Decl. ¶4; Bostwick Decl. ¶4. The lawyers performed their services under the assumption that their clients would be billed for them, which meant the attorneys had to be efficient and reasonable. This pre-planning resulted in a streamlined, efficient process that minimized overlap. Hausman Decl. ¶4. As described above, Mr. Bostwick provided direction and suggestions at the initial stages of the research, Arnold & Porter prepared the initial drafts, and then Mr. Bostwick revised and edited them before they were filed. Hausman Decl. ¶5; Bostwick Decl. ¶4. As Mr. Hausman explains in his declaration, the result was that the total amount of time expended by counsel was no greater than it would have been if the collaborating lawyers had been in a single firm. Hausman Decl. ¶4. Nevertheless, as previously explained, to eliminate any possible question of duplication or inefficiency the fee request has been

substantially reduced by excluding more than $190,000 in fees and costs for certain tasks and for the time of several Arnold & Porter attorneys and research staff.

### 3.   The Overall Amount Of The Attorneys Fees Sought Is Reasonable.

The overall amount of the fees sought are reasonable.  The Complaint and First Amended Complaint alleged Mr. Chanos had harmed the reputation of a large multi-national corporation and one of the foremost developers and operators of casinos in the country and the world.  Just as significantly, the allegations in the complaints were more widely reported than Mr. Chanos's remarks about Wynn Resorts.  Those allegations were damaging to Mr. Chanos's reputation and it was entirely reasonable for him to mount a vigorous defense with a high quality defense team.  As shown above, the rates and amount of time the attorneys spent were reasonable.

The results speak for themselves.  Mr. Chanos succeeded in defeating the complaints against him at the earliest stage possible, and in the most economical fashion possible.  The Court agreed with all three of Mr. Chanos's arguments that it considered (defamatory meaning, mixed statement of opinion and fact, and malice), and indicated a favorable view towards the fourth (common interest privilege).  *See* Order Granting Motion to Dismiss, ECF No. 44; Order Granting Motion to Dismiss and Motion to Strike and Denying Plaintiffs' Motion for Discovery, ECF No. 64.  The Court also agreed with Mr. Chanos that discovery was unnecessary to evaluate Mr. Chanos's motions on the complaints.  *See* Order Denying Discovery Prior to Anti-SLAPP Motion, ECF No. 30.

Based on his counsel's meet and confer discussions with Plaintiffs' counsel, Mr. Chanos expects that Plaintiffs will complain that the fees requested are too much, and that Arnold & Porter's rates are unreasonably high.  However, given that Plaintiffs, by Mr. Wynn's admission to the press, were acting to punish Mr. Chanos with a "day in court" simply because he mentioned Wynn Resorts in the same sentence as the Federal Corrupt Practices Act, he cannot now complain that Mr. Chanos hired skilled and effective counsel to combat the unjustified suit.  As the Fifth Circuit has held: "It is unbecoming for the plaintiffs to hail the defendant into court by means of false allegations and then to complain when the defendant hires skillful, experienced and expensive advocates to defend against those allegations. Having wrongfully kicked the snow loose at the top,

the plaintiff must bear the consequences of the avalanche at the bottom." *Schwarz v. Folloder*, 767 F.2d 125, 133-34 (5th Cir. 1985) (internal quotation marks, citation, and alteration omitted).

Moreover, Plaintiffs needlessly multiplied the proceedings through their requests for discovery and by persisting in the lawsuit long past any likelihood of success by filing the First Amended Complaint.  Those filings were unnecessary and served only to increase Mr. Chanos's fees.  In particular, Mr. Chanos's fees incurred in responding only to the motion for discovery and in the proceedings on the First Amended Complaint constitute 40% of the total fees requested here.  Had Plaintiffs pursued a more reasonable and rational litigation strategy, Plaintiffs' liability for Mr. Chanos's fees would have been considerably lower.

## IV.    CONCLUSION

In sum, the Court should award Mr. Chanos the $590,699.23 in fees and costs reasonably incurred to respond to Plaintiffs' filing of this SLAPP action.

Dated:  March 23, 2015

Respectfully,

ARNOLD & PORTER LLP

By:   */s/ Kenneth G. Hausman*
KENNETH G. HAUSMAN
DOUGLAS A. WINTHROP
JULIAN Y. WALDO

Attorneys for Defendant JAMES CHANOS

Dated:  March 23, 2015

BOSTWICK LAW

By:   */s/ Gary L. Bostwick*
GARY L BOSTWICK

Attorneys for Defendant JAMES CHANOS

### ATTESTATION

Pursuant to Local Rule 5-1(i)(3), I, Kenneth G. Hausman, attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's consent and have authorized the filing.

*/s/ Kenneth G. Hausman*
KENNETH G. HAUSMAN