UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN WYNN, et al., <br><br> Plaintiffs, <br><br> v. <br><br> JAMES CHANOS, <br><br> Defendant. | Case No. 14-cv-04329-WHO <br><br> **ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS' FEES** <br><br> Re: Dkt. No. 66 |

Defendant James Chanos moves for attorneys' fees after prevailing on his motions to dismiss and to strike under California's anti-SLAPP statute, having successfully argued that his speech at an academic symposium was not defamatory. *See* Order (Dkt. No. 66). He requests $538,043.00 in fees and $52,656.23 in costs. Plaintiffs Stephen Wynn and Wynn Resorts object, and some of their concerns are well-founded. Chanos provided no detail regarding the experience of his paralegals in support of an extremely high hourly rate, so I reduce it to a reasonable rate. I reduce his other fees by 25% because his supporting documents do not provide sufficient detail to support the large amount of hours billed by his attorneys and in any event the number of hours requested is excessive given the attorneys' skills and experience and the task at hand. In addition, I reduce by half Chanos's costs related to his expert because Chanos failed to provide any documents to support this request.

**BACKGROUND**

Chanos, a well-known investor and short-seller, participated in an academic symposium at the University of California, Berkeley, where he made allegedly defamatory statements about plaintiff Stephen Wynn and Wynn Resorts, Ltd. (collectively, "Wynn"). *See Wynn v. Chanos*, No. 14-CV-04329-WHO, 2014 WL 7186981, at *1 (N.D. Cal. Dec. 16, 2014). After Wynn sued Chanos, Chanos brought a motion to dismiss and motion to strike under California's anti-SLAPP

1  statute. *Id.* I dismissed the complaint without prejudice because I concluded that Chanos's
2  statements were protected opinions, because the complaint did not adequately plead actual malice,
3  and because Chanos's speech was a matter of public interest. *Id.*
4  After Wynn filed a first amended complaint, Chanos brought another motion to dismiss
5  and motion to strike. *See Wynn v. Chanos*, No. 14-CV-04329-WHO, 2015 WL 971360, at *1
6  (N.D. Cal. Mar. 3, 2015). This time, I dismissed with prejudice and granted Chanos's motion to
7  strike. *Id.* I found that Wynn's complaint failed for the same reasons as before, and that Wynn
8  could not cure it because Chanos's statements were not defamatory as a matter of law. *Id.* I
9  directed Chanos to submit a motion for attorneys' fees that he is entitled to under the California
10 anti-SLAPP statute, which I now address. *Id.* at 4.

## LEGAL STANDARD

District courts typically employ the "lodestar method" to calculate an appropriate amount of attorneys' fees. A lodestar calculation calls for the court to multiply "the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013) (internal quotations omitted). In determining whether an hourly rate is reasonable, courts look to several important principles. *Id.* at 1200. Courts consider the "prevailing market rates in the relevant community," as well as "the experience, skill, and reputation" of the attorney. *Id.* at 1200, 1205-06 (internal citations and quotations omitted). Other factors considered include "(1) the novelty and complexity of the issues; (2) the special skill and experience of counsel; (3) the quality of representation; and (4) the results obtained." *Digital Reg of Texas, LLC v. Adobe Sys., Inc.*, No. C 12-1971 CW, 2015 WL 1968388, at *3 (N.D. Cal. May 1, 2015).

The party seeking an award of fees must establish entitlement to the award and submit evidence that supports the hours worked and the rates claimed. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Fee awards calculated under the loadstar method are generally presumed to be reasonable. *Gonzalez*, 729 F.3d at 1208-09. At the same time, the court may adjust this figure "if circumstances warrant" in order "to account for other factors which are not subsumed within it." *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001). "Where the

United States District Court
Northern District of California

documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433. A reduction may account for "hours that are excessive, redundant, or otherwise unnecessary." *Id.* at 434. In addition, the Ninth Circuit has stated that a district court may "impose a small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion and without a more specific explanation." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

## DISCUSSION

### I. DEFENSE COUNSEL'S HOURLY RATES

Wynn argues that the hourly rates of defense counsel are unreasonable because they do not account for rates in the San Francisco Bay Area legal community as a whole or the rates of attorneys who specialize in defamation and anti-SLAPP litigation. Oppo. 8-9 (Dkt. No. 75). It also objects to Chanos's reliance on Valeo Partners Legal Consulting because the Valeo database is based upon only "twenty-five law firms from the top sixty-five AmLaw revenue generating national law firms" and does not account for smaller firms performing similar services in the Bay Area. *Id.* at 9. It also submits a competing analysis of the average rates of attorneys in the San Francisco Bay Area. *Id.* at 10-14.

In considering whether the hourly rates are reasonable, I find that both parties' submissions are relevant, but not dispositive. *See Banas v. Volcano Corp.*, 47 F. Supp. 3d 957, 965 (N.D. Cal. 2014) (finding rates set forth in Valeo database to be relevant). Although each party spends a significant amount of time arguing that its respective attorneys' fees survey is more appropriate, there is no one set matrix to be used in calculating a reasonable rate for attorneys in the Bay Area who perform a certain type of work. I accordingly consider both parties' supporting evidence as well as my own experience with the prevailing market rate in such cases. *See id.* at 966.

Chanos is seeking the regular hourly rates charged by his lawyers for their services. The hourly rates for partners Kenneth Hausman and Douglas Winthrop are $1,035/1,085 and $875/920 per hour, respectively.[1] Dkt. No. 66-5, Ex. A. Wynn asserts that reasonable rates for these

---

[1] These rates reflect the initial rate of the attorney and their increased rate in 2015.

1    attorneys are $650 and $585 per hour. Oppo. 11. Hausman has over forty years of experience and
2    extensive experience representing clients in the financial industry. Dkt. No. 66-3 ¶ 2. Winthrop
3    has over twenty years of experience in business and IP litigation. Dkt. No. 66-6 ¶ 2. I find that
4    the rates of Hausman and Winthrop, while at the high end of the spectrum, are reasonable rates for
5    attorneys in the Bay Area. *See Banas*, 47 F. Supp. 3d at 965 (approving rates as high as $1,095
6    per hour); *see also Digital Reg of Texas, LLC v. Adobe Sys., Inc.*, No. C 12-1971 CW, 2015 WL
7    1968388, at *3 (N.D. Cal. May 1, 2015) (The "third quartile rates in San Francisco in 2012 were
8    $825 for partners"); *In re Magsafe Apple Power Adapter Litig.*, No. 5:09-CV-01911-EJD, 2015
9    WL 428105, at *12 (N.D. Cal. Jan. 30, 2015) ("In the Bay Area, reasonable hourly rates for
10   partners range from $560 to $800").

11        The hourly rates for associates Julian Waldo and Marco Martemucci, $570/640 and
12   $645/710, respectively, are high. Dkt. No. 66-5, Ex. A. Waldo has over four years of experience
13   and Martemucci has approximately six years of experience. Dkt. Nos. 66-4 ¶ 2, 66-5 ¶ 2. Wynn
14   proposes rates of $355 and $395 per hour. Oppo. 12. The rates charged for the associates are the
15   attorneys' regular hourly rates and are at the top end of what is reasonable in the Bay Area market.
16   *See*, e.g., *Digital Reg of Texas*, 2015 WL 1968388, at *3 (third quartile rate in San Francisco was
17   $576 for associates).

18        Gary Bostwick's requested hourly rate is $750, which Wynn argues should be $625. Dkt.
19   No. 66-5, Ex. A; Oppo. 13. Even Wynn characterizes Bostwick as "one of the country's pre-
20   eminent anti-SLAPP and defamation attorneys." Oppo. 1. Bostwick has over thirty-five years of
21   experience and focuses on First Amendment and media cases. Dkt. No. 66-1 ¶ 2. His hourly rate
22   is reasonable and within the average range of hourly rates for partners in the Bay Area.

23        Finally, Chanos submits hourly rates of $325/340 and $300/320 for legal assistants. Dkt.
24   No. 66-5, Ex. A. These hourly rates are extremely high for a legal assistant in San Francisco.
25   Chanos does not any provide any support for the rates proffered, such as the paralegals' years of
26   experience, background, or other factors which would support an hourly rate well above average.
27   *See* Dkt. No. 75-2 ¶ 42; *see also Banas*, 47 F. Supp. 3d at 965 (finding paralegal rates of $245 to
28   $290 per hour to be high but reasonable); *In re Magsafe Apple Power Adapter Litig.*, 2015 WL

428105, at *12 (paralegal rates and litigation staff ranged from $150 to $240). Wynn's expert proposes an hourly rate for paralegals of $170 per hour, which I find to be reasonable and within the market rate. Oppo. 13-14. Given Chanos's failure to justify its proposed rates for the legal assistants Gresham and Roberts, I calculate both of the legal assistants' rates to be $170 per hour.

## II. THE AMOUNT OF HOURS SPENT

Although the hourly rates for Chanos's counsel fall within the reasonable rate for attorneys in the Bay Area, I emphasize that with such premium rates come "an expectation that [counsel] will complete tasks efficiently and that its more senior attorneys will limit their involvement to tasks requiring their level of expertise." *Banas*, 47 F. Supp. 3d at 966; *see also Hernandez v. Grullense*, No. 12-CV-03257-WHO, 2014 WL 1724356, at *11 (N.D. Cal. Apr. 30, 2014), *appeal dismissed* (July 18, 2014). I address that fundamental issue in addition to Wynn's several objections to the amount of hours spent defending case below.

### A. Retention of both Arnold & Porter and Gary Bostwick

Wynn contends that since Chanos retained Bostwick, a well-known defamation lawyer, it was unreasonable to retain the attorneys at Arnold & Porter to complete the bulk of the work in this case. Oppo. 1-2, 5-7. It states that "the vast majority of the work was performed by people with less expertise and, often, at a higher rate" than Bostwick. *Id.* at 2 (emphasis omitted).

I am not persuaded by Wynn's argument. According to Chanos, "Arnold & Porter has represented Mr. Chanos in a variety of matters for many years." Reply 2 (Dkt. No. 76). I find that it is reasonable to retain both a longtime law firm that is familiar with a client and a specialist in the litigation at hand. This is especially true for cases such as this one, where an individual's personal reputation is at stake. *See Graham-Sult v. Clainos*, 756 F.3d 724, 753 (9th Cir. 2014) (finding that it neither unreasonable nor duplicative to hire two firms in anti-SLAPP action where one firm had a "longstanding relationship" with the client). Here, Chanos did not hire two separate large law firms, but one large law firm and one attorney from a small law firm who specializes in defamation lawsuits. Each firm brought a separate set of skills and resources, and it was not unreasonable to retain both.

At the same time, as with the retention of attorneys with high hourly rates, Chanos's

retention of two firms should result in greater efficiency and a lower amount of total hours billed. That did not occur here.

### B. Hours unrelated to anti-SLAPP motion

Wynn objects to Chanos's billings for work performed on the motions to dismiss because it argues that they were not "performed in connection with the anti-SLAPP motion." Oppo. 7 (internal quotations omitted). It argues that without timesheets indicating that the motions were intertwined, Chanos is not entitled to fees related to these motions. *Id.* at 8.

This is unpersuasive because even without documentation to support it, it is clear that Chanos's motions to dismiss were intertwined with his anti-SLAPP motions. Chanos accurately notes that his motion to dismiss is largely comprised of "cut-and-paste" from the motion to strike. *See* Reply 4; *see also* Dkt. Nos. 11, 16. Chanos is entitled to fees for all motions filed in this case, given their close relation to the anti-SLAPP motion. *See Clainos*, 756 F.3d at 752 (court did not abuse discretion in awarding fees for motions related to anti-SLAPP motion).

### C. Failure to provide timesheets

Wynn claims that Chanos's fee request should be denied because he failed to provide detailed timesheets reflecting the hours worked. Oppo. 3-5. It states that without these records, it cannot determine whether the hours billed are excessive, duplicative, or should have been performed by less senior attorneys or paralegals. *Id.* at 4.

Wynn cites to *Banas*, in which I found that "block billing" was insufficient to establish reasonable attorneys' fees. Oppo. 4. In that case, I defined block billing as "the practice of including various tasks within one time entry without specifying the time spent on each task within an entry." *Banas*, 47 F. Supp. 3d at 981 n.9. I stated that "[w]ithout specifying how much spent was spent on each distinct task . . . there is no way for me to determine whether the time spent on any of these tasks—e.g., trial preparation, summary judgment briefing, opposition to sanctions motion, preparations of jury instructions and verdict form—was reasonable." *Id.* at 967.

This case is somewhat different from *Banas*, because Chanos's billing records do not recite a variety of tasks billed together for a certain number of hours. Instead Chanos separated his billing into distinct tasks: initial investigation and preparation of the first anti-SLAPP motion,

preparation of the motion to dismiss, preparation of the discovery motion, preparation of the anti-SLAPP reply motion, preparation of the reply to the first motion to dismiss, the first motion hearing, preparation of the second anti-SLAPP motion and motion to dismiss, preparation of the second set of reply briefs, and the second hearing. Dkt. No. 66-5, Ex. A. He also described the work that went into such motions in his billing records, motions, and accompanying declarations. The tasks are discrete enough to allow me to evaluate the reasonableness of the hours expended.

That said, there is merit in Wynn's argument that Chanos's proffered support does not provide adequate information because it does not allow me to determine that the entries show duplicative or excessive work. While Chanos's organization of billing hours is not unreasonable per se, it does not provide the degree of specificity needed to justify the unreasonably large amount of hours spent here. *See Banas*, 47 F. Supp. 3d at 967 ("block-billing is not inappropriate *per se,* if the party seeking fees provides enough information to reveal whether the amount of time spent performing tasks was reasonable") (internal quotations omitted). Since I have not been given the detail to support the hours apparently expended by Chanos's counsel, I assume that there is duplicative and unnecessary work buried in the request, and must rely on my judgment on the reasonableness of the hours requested.

### D. Number of hours billed

Having resolved Wynn's objections, I turn to the reasonableness of the total number of hours billed. Chanos requests fees for 776.9 hours in total, amounting to $538,043.00. Dkt. No. 66-5, Ex. A. He submits that the attorneys spent a total of 214.3 hours in the initial investigation and first motion to strike, 43.7 hours preparing the first motion to dismiss, 121.1 hours on the discovery motion, 121.2 hours on the reply to the first motion to strike, 54.7 hours on the first reply to the motion to dismiss, 39.5 hours on the first hearing, 87.4 hours on the preparation of the second motions to dismiss and to strike, 72.2 hours on the reply briefs for the motions to dismiss and to strike, and 22.8 hours on the second hearing. *Id.*[2]

---

[2] Some of the math in Chanos's description of attorneys' fees does not add up. For example, for the "Preparation and Attendance at Hearing on Second Anti-SLAPP and Second Motion to Dismiss," Wynn requests $21,003.00. *See* Dkt. No. 66-5 at 3. When calculating this amount based upon the proffered hours and rate for the attorneys, I calculated this sum as $21,963.00. All

1   There are several reasons why the hours requested are excessive.  First, Chanos used three
2   partners, who generated nearly half of the attorney hours billed in this case, in addition to two
3   high-billing associates.  288.9 hours were billed by partners and 370.9 were billed by associates
4   out of 659.8 attorney hours in total.  Dkt. No. 66-5, Ex. A.  The defamation action was not
5   particularly complex and did not call for three partners to bill at high rates when less costly (and
6   hopefully highly qualified associates, given their billing rates) were equally able to complete the
7   lion's share of the work.[3]  While I am willing to accept the high rates that the firm charged out the
8   associates as indicative of great talent and comparable litigation experience, I concomitantly find
9   that they must have possessed the skills to complete most of the work billed in this case.  Both the
10  number of partners and the amount of hours sought are unreasonable.

11  Second, it is unreasonable for Chanos to separately bill a significant number of hours
12  associated with the motions to dismiss and with the motions to strike.  As discussed, "the motions
13  to dismiss were essentially just cut and paste versions of the same arguments of the anti-SLAPP
14  motions, with certain tailoring to account for the different procedural aspects of the two motions."
15  Reply 4.  The motion to strike lifted the argument in the motion to dismiss that Wynn could not
16  prevail on the merits of his claim because it failed to state a claim.  *See* Dkt. Nos. 11, 16.  The
17  motion to strike was different only in that it applied a different legal standard and added the
18  argument that Wynn was a public figure.  Because of the similarity of the motions, it was
19  unreasonable to bill a significant amount of time for both motions, and many of the hours spent on
20  the motions to dismiss and motions to strike were duplicative and unnecessary.

21  Finally, Chanos's descriptions of the work performed reflect the fact that the hours spent
22  were excessive.  For example, Chanos stated that attorneys conducted research into whether
23  Stephen Wynn and Wynn Resorts qualified as public figures.  Mot. 3 (Dkt. No. 66).  This is not a
24  close question and does not require more than a few hours of research.  I am also skeptical of
25  defense counsel's description of their research into the law surrounding defamation and privilege.

---

the mathematical errors result in a lower requested rate for Chanos than the correct calculation would amount to.  I will therefore consider Chanos's lower, requested amount.

[3] I note that the rates of the associates are as high as many partners in the Bay Area at smaller firms.

*Id.* With a First Amendment expert on their team, little work was needed to determine the contours of state and federal law on defamation. Billing a substantial amount of hours for such work is not reasonable.

Put simply, given the sophistication of counsel and their substantial billing rates, this case should have been litigated much more efficiently without sacrificing quality. After reducing the total amount of fees requested for the reduction in the paralegals' hourly rates, discussed above, I further reduce the fees sought by 25 percent, given (i) the failure of Chanos to provide sufficient detail to support his request (ii) the unreasonable staffing of five skilled attorneys at high rates for this motion practice, including a First Amendment expert and attorneys who were familiar with Chanos and his business; (iii) the relative simplicity of this case; and (iv) the duplication of efforts on preparing the motion to dismiss and the motion to strike. This level of reduction is consistent both with my evaluation of the tasks involved in this relatively straightforward matter and with the range for reductions in cases where parties provided less specificity than necessary to award such a significant amount of fees. *See Lahiri v. Universal Music & Video Distribution Corp.*, 606 F.3d 1216, 1222-23 (9th Cir. 2010) (affirming reduction of 30% to account for block billing and additional 10% reduction for excessive and redundant work); *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007) ("block billing "may increase time by 10% to 30%."); *see also Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011); *Moreno*, 534 F.3d at 1112. A reasonable fee for each task identified by Chanos is 25% less than what is requested for the reasons described above.

### III. COSTS

Finally, Wynn objects to the expert costs submitted by Chanos for John A. Hawkins, arguing that there is no support to justify the expense of $32,850.00. Oppo. 14-15. It points out that "[n]o information was provided as to [the expert's] hourly rate, the number of hours he worked, the tasks he performed, or anything else that might be pertinent to determining whether this expense is reasonable." *Id.* at 15. Chanos does not address this argument in his reply.

I agree with Wynn that Chanos should have provided supporting documentation to justify the $32,850.00 he requests in expert fees. *See* Civil L.R. 54-1(a) ("Appropriate documentation to

9

support each item claimed must be attached to the bill of costs."). While this deficiency would allow me to strike this request in its entirety, I am aware that Wynn caused Chanos to retain the expert by hiring one of his own. The subject matter of both experts' work was not complex, nor particularly helpful. A reasonable amount is half of what Chanos seeks, or $16,425.00, for a total of $32,231.23.[4]

## CONCLUSION

I conclude that although the hourly rates billed by the attorneys in this case were reasonable, the number of hours spent was not. After re-calculating the fees award to reflect the lower rates of paralegals and reducing Chanos's requested fees by 25% for insufficiently detailed time records and an unreasonable number of hours billed, I award Chanos $390,149.63 in fees. He is entitled to $32,231.23 in costs.

**IT IS SO ORDERED**.

Dated: June 19, 2015



WILLIAM H. ORRICK
United States District Judge

---

[4] Wynn does not object to the remainder of Chanos's bill of costs, and I therefore accept the remaining costs. *See Blackburn v. ABC Legal Servs., Inc.*, No. 11-CV-01298 JSW NC, 2012 WL 1067632, at *5 (N.D. Cal. Feb. 24, 2012) *report and recommendation adopted,* No. C 11-01298 JSW, 2012 WL 1067551 (N.D. Cal. Mar. 28, 2012).

10